STATE OF NORTH CAROLINA v. RONNIE THOMPSON

No. 80PA98

(Filed 31 December 1998)

**1. Arrest and Bail § 143 (NCI4th)— pretrial detention— domestic violence—automatic forty-eight hour detention— substantive due process**

Defendant failed to carry his burden of showing that the detention authorized by N.C.G.S. § 15A-534.1(b) is facially unconstitutional as violative of substantive due process where defendant was arrested on a warrant for charges including misdemeanor assault inflicting serious injury, a domestic violence charge; defendant arrived before a magistrate seeking a release order pending trial at 3:34 p.m. on October 28, immediately following his arrest; the magistrate completed a release order form but, under N.C.G.S. § 15A-534.1, designated defendant as a domestic violence arrestee and ordered him sent to jail with an Order of

Commitment Form directing the custodian of the detention facility to bring defendant before a judge or magistrate on October 30 at 3:45 p.m. for bond; defendant remained in jail until Monday afternoon, almost forty-eight hours after his arrest; and there were at least two district court judges available early on Monday to conduct defendant's bond hearing, and probably two superior court judges. The United States Supreme Court has recognized a distinction between punitive measures that may not constitutionally be imposed prior to a determination of guilt and regulatory restraints that may; the statute here serves the General Assembly's legitimate interest in ensuring that a judge rather than a magistrate consider the terms of a domestic violence offender's pretrial release and the detention authorized by the statute is properly classified as a regulatory restraint.

**2. Arrest and Bail § 143 (NCI4th)— pretrial release—domestic violence—automatic forty-eight-hour detention—procedural due process**

Defendant failed to carry his burden of showing that the detention authorized by N.C.G.S. § 15A-534.1(b) following a domestic violence arrest is facially unconstitutional as violative of procedural due process. The statute insures that an arrestee detained by a magistrate pending a judicial determination of the conditions of his or her pretrial release will be detained no longer than forty-eight hours without a hearing and the arrestee detained under N.C.G.S. § 15A-534.1(b) should receive a hearing as soon as possible following his or her arrest. The statute thus provides the procedural protection considered to be immune from systemic challenges.

**3. Arrest and Bail § 143 (NCI4th)— pretrial detention—domestic violence—automatic forty-eight-hour detention—double jeopardy**

The defendant did not satisfy his burden of establishing that N.C.G.S. § 15A-534.1(b) is facially unconstitutional on double jeopardy grounds because detentions under the statute, when administered as intended, are regulatory and subsequent criminal prosecution of an arrestee who has been regulated, but not punished, does not expose the arrestee to multiple punishments for the same offense under established double jeopardy principles. Furthermore, the statute does not require pretrial detention or prescribe any minimum period of detention.

**4. Appeal and Error § 150 (NCI4th)— pretrial detention—constitutionality of statute as applied—reserved for appeal**

Defendant preserved for appeal the constitutionality of a pretrial detention statute as applied to him by assignments of error to the court's conclusion that the statute was constitutional on the grounds that the statute did not violate double jeopardy and due process as well as the conclusion that the statute does not violate any substantive law. These assignments of error attack the broad conclusion by the court that the statute is constitutional and defendant is not limited either to a facial constitutional challenge or to an as-applied constitutional challenge.

**5. Arrest and Bail § 143 (NCI4th)— pretrial detention—domestic violence—unconstitutional as applied**

N.C.G.S. § 15A-534.1(b) was unconstitutional as applied to defendant in this case where defendant was arrested at 3:45 p.m. on a Saturday, the order of commitment did not authorize his release from jail for a bond hearing until 3:45 the following Monday, he was not brought before a judge upon the opening of court on Monday morning, and it is clear that at least two district court judges were available early on Monday and probable that two superior court judges were available. Under these discrete facts, the magistrate's order automatically detaining defendant without a hearing until well into the afternoon while available judges spent several hours conducting other business violated defendant's procedural due process rights to a timely pretrial release hearing under N.C.G.S. § 15A-534.1(a). The constitutional violation deprived defendant of liberty unreasonably, well beyond any time period necessary to serve any governmental interest in detaining him without a hearing for regulatory purposes.

On appeal of a substantial constitutional question pursuant to N.C.G.S. § 7A-30(1) and on discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 128 N.C. App. 547, 496 S.E.2d 597 (1998), affirming an order and supplemental order entered by Hudson, J., at the 18 March 1996 Criminal Session of Superior Court, Durham County. Heard in the Supreme Court 14 October 1998.

STATE v. THOMPSON

[349 N.C. 483 (1998)]

*Michael F. Easley, Attorney General, by Teresa L. Harris, Assistant Attorney General, for the State.*

*Office of the Public Defender, by Russell J. Hollers III, Assistant Public Defender, for defendant-appellant.*

*The American Civil Liberties Union of North Carolina Legal Foundation, by Mebane Rash Whitman, amicus curiae.*

WHICHARD, Justice.

The issue is whether N.C.G.S. § 15A-534.1(b), regarding the bail and pretrial release of individuals accused of having committed crimes of domestic violence, is unconstitutional, on its face or as applied, under the Due Process and Double Jeopardy Clauses of the United States Constitution. We conclude that the statute, as applied to defendant under the discrete facts presented, deprived him of his federal constitutional right to procedural due process.

In 1979 Governor James B. Hunt, Jr., formally recognized that domestic violence is a "serious and invisible problem" in North Carolina. North Carolina Legislation 1979, at 61 (Inst. of Gov't, Univ. of N.C. at Chapel Hill, Joan G. Brannon & Ann L. Sawyer eds. 1979). Shortly thereafter, the General Assembly responded to public concern about domestic violence by passing Senate Bill 171, which was codified as N.C.G.S. § 15A-534.1. This legislation established a special pretrial-release provision for individuals charged with crimes of domestic violence. *Id.* at 62. The General Assembly recognized that in particular situations, individuals charged with crimes of domestic violence may pose an identifiable threat to their victims after these individuals have been released on bond. Thus, this legislation empowered judicial officials, including judges and magistrates, to order preventive, pretrial detention of a domestic-violence arrestee for a "reasonable period of time" while determining the conditions of the arrestee's release. Act of May 14, 1979, ch. 561, sec. 4, 1979 N.C. Sess. Laws 592, 594. This grant of authority to judicial officials also contained a limitation: They could order pretrial detention of a domestic-violence arrestee only if they specifically found that the arrestee's immediate release on an appearance bond posed a danger of injury or was likely to result in intimidation of the alleged victim. *Id.*

In 1995, almost two decades after the enactment of N.C.G.S. § 15A-534.1, the General Assembly amended this statute. Act of

June 10, 1975, ch. 527, sec. 3, 1995 N.C. Sess. Laws 546, 546 (making amendments effective upon ratification). "[P]erhaps the most significant change" in this domestic-violence legislation "provides that a magistrate may no longer set conditions of pretrial release in certain domestic violence cases." North Carolina Legislation 1995, at 5-9 (Inst. of Gov't, Univ. of N.C. at Chapel Hill, Joseph S. Ferrell ed. 1995). Under the amended statute, "the judicial official who determines the conditions of pretrial release shall be a judge," N.C.G.S. § 15A-534.1(a) (1997), and a magistrate may act only "[i]f a judge has not acted" within forty-eight hours following the arrest of the accused, N.C.G.S. § 15A-534.1(b). Essentially, under the amended domestic-violence legislation, the arrestee "must be held in jail," without a consideration of the specific facts of his or her case, "until a judge [or, after forty-eight hours, a magistrate] sets conditions of pretrial release." North Carolina Legislation 1995, at 5-9. The amended statute provides:

§ 15A-534.1. Crimes of domestic violence; bail and pretrial release.

(a) In all cases in which the defendant is charged with assault on or communicating a threat to a spouse or former spouse or a person with whom the defendant lives or has lived as if married, with domestic criminal trespass, or with violation of an order entered pursuant to Chapter 50B, Domestic Violence, of the General Statutes, the judicial official who determines the conditions of pretrial release shall be a judge, and the following provisions shall apply in addition to the provisions of G.S. 15A-534:

(1) Upon a determination by the judge that the immediate release of the defendant will pose a danger of injury to the alleged victim or to any other person or is likely to result in intimidation of the alleged victim and upon a determination that the execution of an appearance bond as required by G.S. 15A-534 will not reasonably assure that such injury or intimidation will not occur, a judge may retain the defendant in custody for a reasonable period of time while determining the conditions of pretrial release.

(2) A judge may impose the following conditions on pretrial release:

a. That the defendant stay away from the home, school, business or place of employment of the alleged victim;

b. That the defendant refrain from assaulting, beating, molesting, or wounding the alleged victim;

c. That the defendant refrain from removing, damaging or injuring specifically identified property;

d. That the defendant may visit his or her child or children at times and places provided by the terms of any existing order entered by a judge.

The conditions set forth above may be imposed in addition to requiring that the defendant execute a secured appearance bond.

(3) Should the defendant be mentally ill and dangerous to himself or others or a substance abuser and dangerous to himself or others, the provisions of Article 5 of Chapter 122C of the General Statutes shall apply.

(b) A defendant may be retained in custody not more than 48 hours from the time of arrest without a determination being made under this section by a judge. If a judge has not acted pursuant to this section within 48 hours of arrest, the magistrate shall act under the provisions of this section.

N.C.G.S. § 15A-534.1.

On 21 October 1995, shortly after the amendments to N.C.G.S. § 15A-534.1 became effective, Tina Upchurch took out a warrant for defendant Ronnie Thompson's arrest. Upchurch alleged that defendant was formerly her domestic partner and that he had assaulted her, inflicting serious injury. Based upon these allegations, a magistrate determined that probable cause existed to issue a warrant for defendant's arrest for misdemeanor assault inflicting serious injury.

Seven days later, on Saturday, 28 October 1995, the police arrested defendant and charged him with three misdemeanor offenses: assault inflicting serious injury, N.C.G.S. § 14-33(b)(1) (1993); assault on a female, N.C.G.S. § 14-33(b)(2); and second-degree trespass, N.C.G.S. § 14-159.13 (1993). The charge of misdemeanor assault inflicting serious injury, N.C.G.S. § 14-33(b)(1), is the only charge of domestic violence. The assault on a female, N.C.G.S. § 14-33(b)(2), and second-degree trespass, N.C.G.S. § 14-159.13, charges were allegedly committed against Dorothy Bennett, who was a friend of Tina Upchurch's. There is no suggestion of a domestic-partner relationship between defendant and Bennett.

Immediately following defendant's arrest, at 3:45 p.m. on 28 October, defendant arrived before a second magistrate seeking a "Release Order" pending trial. The magistrate completed a "Release Order" form, but under recently amended N.C.G.S. § 15A-534.1, the magistrate did not authorize defendant's release pending trial. Instead, the magistrate denied bond, designated defendant as a "Domestic Violence" arrestee, and ordered him sent to jail. The magistrate completed an "Order of Commitment" form directed to the "Custodian of the Detention Facility" to which defendant was sent. He ordered that the custodian of the detention facility "[b]ring [defendant] before Judge or Magistrate 10/30/95 3:45 p.m. for Bond." The magistrate signed and dated this order at the time of its issuance on Saturday, 28 October 1995.

Upon this order of commitment, defendant spent almost forty-eight hours, including two nights, in jail without bond on three misdemeanor charges. On 30 October, officers led defendant from the jail to the courtroom. Following a bond hearing on the facts relevant to the charges, a judge released defendant on a $5,000 secured bond.

When defendant's case was called for trial in District Court, defendant argued that N.C.G.S. § 15A-534.1(b), the amended domestic-violence, pretrial-release legislation, was unconstitutional because it authorized a magistrate to detain defendant in jail for forty-eight hours prior to trial and without a prompt post-detention hearing before a judge. Defendant also moved to dismiss the charges against him under N.C.G.S. § 15A-954(a)(4) (1997), which authorizes a court to dismiss charges against a criminal defendant when that defendant's constitutional rights have been violated resulting in irreparable prejudice. The District Court concluded that "[t]he application of N.C.G.S. § 15A-534.1 was unconstitutional." The court recognized that defendant was automatically denied bond by a magistrate based solely upon defendant's status as a domestic-violence arrestee, that defendant was "not entitled to present evidence regarding appropriate conditions of pretrial release," and that "defendant [had] no right to appeal [the magistrate's] denial of conditions of release." The court also explained that defendant's "due process rights have been flagrantly violated," that defendant "was denied his constitutional right to reasonable conditions of pretrial release within a reasonable amount of time," and that "[f]urther prosecution would subject him to punishment for the same offense twice." The District Court dismissed the charges.

STATE v. THOMPSON

[349 N.C. 483 (1998)]

The State appealed, and the Superior Court reversed. The Superior Court concluded, without explanation, that "[t]he domestic violence bond law, N.C.G.S. § 15A-534.1[,] is constitutional and thus does not violate the Double Jeopardy Clause of the 5th Amendment to the U.S. Constitution, the due process clause of the 14th Amendment, nor any other substantive law." The Superior Court reinstated the criminal charges against defendant and remanded to the District Court for trial.

On defendant's appeal from that decision, the Court of Appeals held that, on its face, N.C.G.S. § 15A-534.1 "does not violate either the Double Jeopardy or Due Process Clauses of the United States Constitution," *State v. Thompson*, 128 N.C. App. 547, 558, 496 S.E.2d. 597, 604 (1998), and that "defendant has waived any challenge to the constitutionality of the statute as applied to him," *id.* at 556, 496 S.E.2d at 602. The Court of Appeals affirmed.

Defendant appealed to this Court on the basis that the case presented a substantial question arising under the Constitution of the United States. N.C.G.S. § 7A-30(1) (1995). On 6 May 1998 this Court allowed defendant's petition for discretionary review. We now reverse the Court of Appeals.

Defendant again argues that N.C.G.S. § 15A-534.1(b) is unconstitutional, on its face and as applied to him, under the Double Jeopardy and Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Before reaching the merits of defendant's contentions, we address two preliminary matters.

First, defendant states in his brief that N.C.G.S. § 15A-534.1(b) is unconstitutional under both the United States Constitution and the North Carolina Constitution. He has failed, however, to make any argument under the North Carolina Constitution. We agree with the Court of Appeals that because "defendant has . . . failed to present arguments regarding . . . state constitutional violations[,] . . . [he] has waived any further consideration of those issues." *Thompson*, 128 N.C. App. at 556, 496 S.E.2d at 602; *see* N.C. R. App. P. 28(b)(5).

Second, although defendant at times argues broadly about N.C.G.S. § 15A-534.1 in its entirety, the substance of his arguments challenges only subsection (b), under which a magistrate ordered defendant held in jail for almost two days without a prompt bond hearing before a judge. Defendant's arguments do not challenge subsection (a), under which a judge considered the facts applicable to

the charges against defendant and released defendant on a $5,000 bond. Thus, no challenge to N.C.G.S. § 15A-534.1(a) is presented.

"A facial challenge to a legislative [a]ct is, of course, the most difficult challenge to mount successfully." *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707 (1987). "The presumption is that any act passed by the legislature is constitutional, and the court will not strike it down if [it] can be upheld on any reasonable ground." *Ramsey v. N.C. Veterans Comm'n*, 261 N.C. 645, 647, 135 S.E.2d 659, 661 (1964). An individual challenging the facial constitutionality of a legislative act "must establish that no set of circumstances exists under which the [a]ct would be valid." *Salerno*, 481 U.S. at 745, 95 L. Ed. 2d at 707. The fact that a statute "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Id.*

Defendant contends that N.C.G.S. § 15A-534.1(b) is unconstitutional on its face under principles of substantive due process, procedural due process, and double jeopardy. We consider each of these arguments in turn.

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It provides two types of protection for individuals against improper governmental action. "Substantive due process" protection prevents the government from engaging in conduct that "shocks the conscience," *Rochin v. California*, 342 U.S. 165, 172, 96 L. Ed. 183, 190 (1952), or interferes with rights "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325, 82 L. Ed. 288, 292 (1937), *overruled on other grounds by Benton v. Maryland*, 395 U.S. 784, 23 L. Ed. 2d 707 (1969). "Procedural due process" protection ensures that when government action depriving a person of life, liberty, or property survives substantive due process review, that action is implemented in a fair manner. *Salerno*, 481 U.S. at 746, 95 L. Ed. 2d at 708; *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33 (1976).

[1] Defendant asserts that N.C.G.S. § 15A-534.1(b) violates substantive due process requirements because the forty-eight-hour pretrial detention authorized shocks the conscience and constitutes an impermissible deprivation of freedom before guilt has been established by trial and without a preliminary hearing regarding an arrestee's potential dangerousness if released on bond. An individual's liberty interest is substantial. *See Schall v. Martin*, 467 U.S. 253,

STATE v. THOMPSON

[349 N.C. 483 (1998)]

265, 81 L. Ed. 2d 207, 217 (1984). Governmental action depriving an individual of that interest via detention prior to a hearing is subject to substantive due process review. *See Salerno*, 481 U.S. at 746, 95 L. Ed. 2d at 708; *Schall*, 467 U.S. at 263, 81 L. Ed. 2d at 216. When considering the facial constitutionality of pretrial detention provisions under principles of substantive due process, the United States Supreme Court "has recognized a distinction between punitive measures that may not constitutionally be imposed prior to a determination of guilt and regulatory restraints that may." *Bell v. Wolfish*, 441 U.S. 520, 537, 60 L. Ed. 2d 447, 467 (1979); *see also Salerno*, 481 U.S. at 747, 95 L. Ed. 2d at 708. The Court has determined that "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." *Salerno*, 481 U.S. at 746, 95 L. Ed. 2d at 708. Pretrial detention may, "in appropriate circumstances," amount to permissible regulation. *Id.* at 748, 95 L. Ed. 2d at 709.

In *Salerno* the Court said:

Unless Congress expressly intended to impose punitive restrictions, the punitive/regulatory distinction turns on " 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].' " [*Schall*, 467 U.S. at 269, 81 L. Ed. 2d at 220], quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169, 9 L. Ed. 2d 644[, 661] (1963).

*Salerno*, 481 U.S. at 747, 95 L. Ed. 2d at 708. Further, when legislation serves a nonpunitive purpose, pretrial detention for up to forty-eight hours without a determination of probable cause may "in a particular case" pass constitutional muster under the prompt-trial requirements of the Fourth Amendment. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 114 L. Ed. 2d 49, 63 (1991).

Here, the General Assembly did not express an intention to punish domestic-violence offenders when it amended N.C.G.S. § 15A-534.1 by enacting subsection (b). Instead, N.C.G.S. § 15A-534.1(b) serves the General Assembly's legitimate interest in ensuring that a judge, rather than a magistrate, consider the terms of a domestic-violence offender's pretrial release. Subsection (b) reflects the General Assembly's regulatory purpose by authorizing magistrates to detain an arrestee for up to forty-eight hours while attempting to secure the first available judge to hold a pretrial-release hearing. This limited authorization of pretrial detention is not exces-

sive in relation to the government's legitimate interest. It does not authorize indefinite or extensive detention of an arrestee to effectuate the legislative purpose; instead, it limits detention to a maximum of forty-eight hours. If a judge has not performed an arrestee's pretrial release hearing within forty-eight hours of arrest, the magistrate "shall" conduct the hearing. N.C.G.S. § 15A-534.1(b). Thus, as a general matter, under *Schall* and *Salerno*, the detention authorized by N.C.G.S. § 15A-534.1(b) is properly classified as a regulatory restraint, not a punitive measure.

Because regulatory pretrial detention for forty-eight hours can, in appropriate circumstances, comport with the demands of substantive due process, *see County of Riverside*, 500 U.S. at 56, 114 L. Ed. 2d at 63; *Salerno*, 481 U.S. at 751, 95 L. Ed. 2d at 711, "we cannot categorically state" that the forty-eight-hour maximum pretrial detention authorized by N.C.G.S. § 15A-534.1(b) " 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Salerno*, 481 U.S. at 751, 95 L. Ed. 2d at 711 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105, 78 L. Ed. 674, 677 (1934). Thus, we conclude that defendant has failed to carry his burden of showing that the detention authorized by N.C.G.S. § 15A-534.1(b) is facially unconstitutional as violative of substantive due process.

**[2]** Defendant next contends that N.C.G.S. § 15A-534.1(b) fails procedural due process scrutiny because it authorizes detention of an arrestee prior to trial based solely upon a probable-cause determination and without any other predetention hearing. Defendant emphasizes that N.C.G.S. § 15A-534.1(b) does not require that a magistrate provide a defendant with an adversary hearing with the right to an attorney, the right to present evidence, and the right to cross-examine witnesses before the magistrate may detain the defendant pending a judicial determination of the conditions of that defendant's pretrial release. Defendant asserts that because N.C.G.S. § 15A-534.1(b) does not require such procedural safeguards, it is facially unconstitutional under principles of procedural due process.

In order to sustain the procedure contained in N.C.G.S. § 15A-534.1(b) against this facial challenge, we need only find the procedures "adequate to authorize the pretrial detention of at least some [persons] charged with crimes," *Schall*, 467 U.S. at 264, 81 L. Ed. 2d at 217, "whether or not they might be insufficient in some particular circumstances," *Salerno*, 481 U.S. at 751, 95 L. Ed. 2d at

711. The United States Supreme Court has held that "extensive safe-guards" prior to pretrial detention, including a hearing at which defendant's attorney may cross-examine witnesses, "suffice to repel a facial challenge." *Id.* at 752, 95 L. Ed. 2d at 712. However, that Court has not *required* such procedures to defeat such a challenge. In fact, the Court has upheld significantly less-exacting procedures when challenged as facially unconstitutional. *See County of Riverside*, 500 U.S. at 57, 114 L. Ed. 2d at 63 (holding that detention of an arrestee who was arrested without a warrant and was detained without any hearing survived a facial constitutional challenge when a judicial hearing on probable cause was provided as soon as possible follow-ing arrest and in any event within forty-eight hours); *Schall*, 467 U.S. at 274-75, 81 L. Ed. 2d at 223-24 (holding that the procedures afforded juveniles detained prior to fact-finding provided "sufficient protec-tion against erroneous and unnecessary deprivations of liberty" even though those procedures did not require the full panoply of adversar-ial safeguards); *Gerstein v. Pugh*, 420 U.S. 103, 120-22, 43 L. Ed. 2d 54, 69-70 (1975) (holding that a procedure whereby a magistrate deter-mined in a "nonadversary proceeding [based] on hearsay and written testimony" that probable cause existed to believe the suspect had committed a crime was sufficient to withstand constitutional scrutiny and to effect limited postarrest detention).

In *County of Riverside*, the United States Supreme Court consid-ered the constitutional claims of individuals who, unlike defendant here, were arrested without a warrant and, like defendant here, were detained for up to forty-eight hours before receiving a hearing of any kind. 500 U.S. at 48, 114 L. Ed. 2d at 57. The arrestees in *County of Riverside* appear to have argued, as defendant argues here, that leg-islation authorizing pretrial detention without providing an eviden-tiary hearing violates the protections afforded by the United States Constitution. *Id.* at 49, 114 L. Ed. 2d at 58. The Court contemplated these claims under the Fourth Amendment's promptness require-ment, but it ultimately reached the broad conclusion that "jurisdic-tion[s] that provide[] judicial [hearings] . . . within 48 hours of ar-rest will, as a general matter, . . . be immune from systemic chal-lenges" to the constitutionality of any prehearing detention. *Id.* at 56, 114 L. Ed. 2d at 63.

N.C.G.S. § 15A-534.1(b) ensures that any arrestee detained by a magistrate pending a judicial determination of the conditions of his or her pretrial release will be detained no longer than forty-eight hours without a hearing. It directs that "[i]f a judge has not acted pur-

suant to this section within 48 hours of arrest, the magistrate *shall* act under the provisions of this section" to provide defendant with the appropriate hearing. N.C.G.S. § 15A-534.1(b) (emphasis added). An arrestee detained under N.C.G.S. § 15A-534.1(b) should receive a hearing under N.C.G.S. § 15A-534.1(a) as soon as possible following his or her arrest and no later than forty-eight hours after arrest. Thus, N.C.G.S. § 15A-534.1(b) provides the procedural protection considered to be "immune from systemic challenges." *County of Riverside*, 500 U.S. at 56, 114 L. Ed. 2d at 63. We thus conclude that defendant has failed to carry his burden of showing that the detention authorized by N.C.G.S. § 15A-534.1(b) is facially unconstitutional as violative of procedural due process.

**[3]** In his final facial challenge to N.C.G.S. § 15A-534.1(b), defendant contends that the statute violates the Double Jeopardy Clause of the Fifth Amendment because it permits individuals to be punished twice for the same offense. The Double Jeopardy Clause states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause protects against three distinct abuses: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 664-65 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 104 L. Ed. 2d 865 (1989). Defendant asserts that he has been subjected to the third of these abuses here. He contends that when an individual is arrested on a charge of domestic violence and detained without a hearing under N.C.G.S. § 15A-534.1(b), he has been "punished" for purposes of double-jeopardy analysis. Thus, a subsequent criminal prosecution based upon the same conduct amounts to a "multiple punishment" for the same offense.

Contrary to defendant's position, there are a number of circumstances under which the detention N.C.G.S. § 15A-534.1(b) authorizes does not raise double-jeopardy concerns. As discussed above, "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." *Salerno*, 481 U.S. at 746, 95 L. Ed. 2d at 708. When N.C.G.S. § 15A-534.1 is administered as intended, detentions thereunder are regulatory. *See id.* Thus, when an individual arrested upon an allegation of domestic violence undergoes regulatory detention under N.C.G.S. § 15A-534.1(b) for a brief period of time while awaiting the first available judge to hold a pretrial release hearing under N.C.G.S.

STATE v. THOMPSON

[349 N.C. 483 (1998)]

§ 15A-534.1(a), no double-jeopardy concern arises. Subsequent criminal prosecution of an arrestee who has been regulated, but not punished, does not expose the arrestee to "multiple punishments" for the same offense under established double-jeopardy principles.

Further, N.C.G.S. § 15A-534.1(b) does not *require* pretrial detention or prescribe any minimum period of detention. Individuals charged with domestic violence might not be detained at all under the statute; they might be brought before a judge for a pretrial-release hearing immediately following arrest. In such instances, no double-jeopardy concern arises because the arrestee, who has not been punished or detained under N.C.G.S. § 15A-534.1(b), suffers no "multiple punishment" upon subsequent criminal prosecution.

We conclude that defendant has not satisfied his burden of "establish[ing] that no set of circumstances exists under which the [a]ct would be valid." *Salerno*, 481 U.S. at 745, 95 L. Ed. 2d at 707. N.C.G.S. § 15A-534.1(b) thus survives defendant's facial constitutional challenge on double-jeopardy grounds.

**[4]** We turn, then, to defendant's contention that this statute was applied unconstitutionally in this case. The State argues, and the Court of Appeals held, that "defendant has waived any challenge to the constitutionality of the statute as applied to him" because "defendant's assignments of error . . . attack only the facial validity of the statute." *Thompson*, 128 N.C. App. at 556, 496 S.E.2d at 602. We disagree. Defendant assigned as error "[t]he [superior] court's conclusion of law that the bond statute is constitutional on the ground that the statute violates the double jeopardy clauses of the United States Constitution and North Carolina Constitution." Defendant also assigned as error "[t]he [superior] court's conclusion of law that the bond statute is constitutional on the ground that the statute violates the due process clauses of the United States Constitution and North Carolina Constitution." Defendant further assigned as error "[t]he [superior] court's conclusion of law that the bond statute does not violate any substantive law." These assignments attack the broad conclusion by the Superior Court that N.C.G.S. § 15A-534.1(b) is constitutional. They are not limited either to a facial constitutional challenge or to an as-applied constitutional challenge. Thus, they suffice to preserve both.

**[5]** Defendant correctly recognizes that pretrial detention pursuant to N.C.G.S. § 15A-534.1(b) does not pass constitutional muster in a particular case simply because it is constitutionally permissible in

the abstract. Constitutional attacks on criminal statutes must often "be made on a case-by-case basis." *Schall*, 467 U.S. at 269 n.18, 81 L. Ed. 2d at 220 n.18; *see also County of Riverside*, 500 U.S. at 56, 114 L. Ed. 2d at 63 (holding that a provision authorizing pretrial detention of an individual arrested without a warrant for up to forty-eight hours pending a probable-cause hearing by a judge survives a facial constitutional challenge, but recognizing that this provision may be unconstitutionally applied in an individual case); *Salerno*, 481 U.S. at 751, 95 L. Ed. 2d at 711 (holding that the pretrial detention procedures under the Bail Reform Act were sufficient to survive a facial constitutional challenge, but recognizing that "they might be insufficient in some particular circumstances"). Defendant contends that N.C.G.S. § 15A-534.1(b) is unconstitutional as applied under the Fifth and Fourteenth Amendments under principles of procedural due process, substantive due process, and double jeopardy. We first consider defendant's procedural due process contentions.

Defendant argues that the magistrate here unconstitutionally delayed the post-detention process to which he is entitled under the Due Process Clause of the Fifth Amendment. Defendant was arrested at 3:45 p.m. on a Saturday. The magistrate's order of commitment did not authorize defendant's release from jail for a bond hearing until 3:45 p.m. the following Monday. Defendant was not brought before a judge upon the opening of court on Monday morning. He, instead, remained in jail until Monday afternoon, almost forty-eight hours after his arrest.

This Court may take judicial notice of the public records of other courts within the state judicial system. *Alpine Motors Corp. v. Hagwood*, 233 N.C. 57, 62 S.E.2d 518 (1950). We accordingly take judicial notice of the following facts established by the public records contained in the office of the Clerk of Superior Court, Durham County. Two sessions of District Court convened in Durham County at or about 9:00 a.m. on 30 October 1995, the date in question: a session of District Criminal Court with Judge Carolyn Johnson presiding, and a session of District Traffic Court with Chief Judge Kenneth Titus presiding. Two sessions of Superior Criminal Court also commenced in Durham County on that date: one with Judge Robert L. Farmer presiding, and one with Judge A. Leon Stanback, Jr., presiding. The records do not reveal the starting time for the Superior Court sessions. We can, however, take judicial notice of matters of common and general knowledge. *Hughes v. Vestal*, 264 N.C. 500, 506, 142 S.E.2d 361, 366 (1965); *Dowdy v. Southern Ry. Co.*, 237 N.C. 519, 526,

75 S.E.2d 639, 644 (1953). We accordingly take judicial notice of the commonly known fact that our superior courts generally convene for the conduct of business somewhere in the 9:00-10:00 a.m. range. It is thus clear that at least two District Court judges were available early on Monday, 30 October 1995, to conduct defendant's bond hearing, and it is probable that two Superior Court judges were available. Under these discrete facts, we agree with defendant that the magistrate's order automatically detaining him without a hearing until well into the afternoon, while available judges spent several hours conducting other business, violated his procedural due process rights to a timely pretrial-release hearing under N.C.G.S. § 15A-534.1(a).

As discussed above, procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332, 47 L. Ed. 2d at 31. The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 14 L. Ed. 2d 62, 66 (1965). " 'Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances.' " *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895, 6 L. Ed. 2d 1230, 1236 (1961) (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 162-63, 95 L. Ed. 817, 849 (1951) (Frankfurter, J., concurring)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 33 L. Ed. 2d 484, 494 (1972). Accordingly, resolution of whether the statutory procedures as implemented here are constitutionally sufficient requires analysis of the particular circumstances of the case.

In deciding whether the challenged delay in judicial review of defendant's pretrial detention satisfies the flexible demands of procedural due process, we must examine both the private and governmental interests affected. *Mathews*, 424 U.S. at 334, 47 L. Ed at 33. The United States Supreme Court has articulated the following factors to be considered when a statute is challenged as unconstitutional as applied under principles of procedural due process:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any,

of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 47 L. Ed. 2d at 33. More recently, the Court slightly reformulated these factors for use in assessing the permissibility of post-deprivation process delay such as that at issue here. It stated:

In determining how long a delay is justified in affording a post-[deprivation] hearing and decision, it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken.

*FDIC v. Mallen,* 486 U.S. 230, 242, 100 L. Ed. 2d 265, 279 (1988). The Fourth Circuit has explained this reformulation as follows:

Presumably, this refinement was undertaken out of recognition of the awkwardness of a literal application of the *Mathews* factors in this context. Where the question is not whether there will be post-deprivation review, but the timeliness of such review, it is not meaningful to inquire, as it is in the typical procedural due process context, whether the procedure sought—sooner review—would reduce the likelihood of an erroneous deprivation. The deprivation has already occurred, it is understood that there will be judicial review, and the deprivation, even if in error, cannot be "undone" by sooner judicial review. At most, the risk of an extended erroneous deprivation could be reduced. The more relevant questions therefore are the harm to the private interests that will be occasioned by the delay in review and the state's justifications for the delay.

*Jordan v. Jackson,* 15 F.3d 333, 345 (4th Cir. 1994) (citation omitted).

In considering the first factor articulated in both *Mathews* and *FDIC,* it is beyond question that the private interest at stake, liberty, is a fundamental right. "Th[e] traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." *Stack v. Boyle,* 342 U.S. 1, 4, 96 L. Ed. 3, 6 (1951). The right to freedom prior to trial is reflected in the "principle that there is a presumption of innocence in favor of the accused [which] is the undoubted law,

axiomatic and elementary, and . . . lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453, 39 L. Ed. 481, 491 (1895).

Delay in post-deprivation judicial review under N.C.G.S. § 15A-534.1(b) may result in significant harm to a defendant's private interest in liberty prior to trial. "The consequences of prolonged detention [prior to trial] may be more serious than the interference occasioned by arrest." *Gerstein*, 420 U.S. at 114, 43 L. Ed. 2d at 65; *see also Stack*, 342 U.S. at 4, 96 L. Ed. at 6 (recognizing that freedom prior to trial ensures a defendant's unhampered preparation of his defense). Additionally, "[p]retrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." *Gerstein*, 420 U.S. at 114, 43 L. Ed. 2d at 65.

Having recognized the importance of defendant's interest in liberty prior to trial as well as the potential harm caused by delay in providing post-detention proceedings, we consider "the justification offered by the Government for delay [in providing post-deprivation proceedings] and its relation to the underlying governmental interest." *FDIC*, 486 U.S. at 242, 100 L. Ed. 2d at 279. Defendant's private interests in liberty are not without public counterpart. The State has a legitimate interest in providing that a legally trained judge perform individualized determinations of bail and set conditions of release in domestic-violence cases. The State, however, also claims a corollary interest in detaining a domestic-violence arrestee while securing a judge to perform this function. The State argues that this legitimate interest justifies a forty-eight-hour delay in providing post-deprivation proceedings to a domestic-violence offender, even when a judge becomes available to conduct such hearing prior to the expiration of the forty-eight hours. This argument is untenable. Here, once a judge became available to conduct a post-detention hearing on Monday morning, further delay in providing this hearing did not serve any underlying interest of the State. All such interests had been served in full. Judicial review of pretrial detention may not be delayed unreasonably without running afoul of the Constitution. *County of Riverside*, 500 U.S. at 56, 114 L. Ed. 2d at 63. The failure to provide defendant with a bond hearing before a judge at the first opportunity on Monday morning, and the continued detention of defendant well into the afternoon, was unnecessary, unreasonable, and thus constitutionally impermissible under *County of Riverside*.

The State suggests a second justification for an automatic forty-eight-hour delay in bringing a domestic-violence arrestee before an

available judge for a pretrial-release hearing. It contends that this delayed hearing is justified to allow the arrestee to "cool off." In this manner, the State argues, as stated by the Court of Appeals, "N.C. Gen. Stat. § 15A-534.1 . . . protect[s] victims of domestic violence from further harm by their abusers and . . . provide[s] a period of time in which inflamed tempers may abate." *Thompson*, 128 N.C. App. at 555, 496 S.E.2d at 601.

This "cooling off" justification for detaining a domestic-violence arrestee beyond the time at which a judge is available to consider the conditions of that arrestee's pretrial release has no relationship to the State's interest in having a judge, rather than a magistrate, conduct domestic-violence, pretrial-release hearings under N.C.G.S. § 15A-534.1(b). Further, providing a prompt pretrial-release hearing can provide ample opportunity for a domestic-violence offender to "cool off." A judge conducting such a hearing "may retain the defendant in custody for a reasonable period of time" beyond the initial forty-eight hours authorized by N.C.G.S. § 15A-534.1(b) if the judge determines that "release of the defendant will pose a danger of injury to the alleged victim." N.C.G.S. § 15A-534.1(a).

Eliminating unnecessary delay in bringing a domestic-violence arrestee before a judge for a hearing to determine bail and conditions of pretrial release benefits domestic-violence arrestees at minimal or no cost to the State. *See Mathews*, 424 U.S. at 335, 47 L. Ed. 2d at 33 (stating that considering whether a statute violates procedural due process as applied requires that a court consider "the probable value, if any, of additional or substitute procedural safeguards"). Here, for example, a prompt hearing before the first available judge would likely have prevented several hours of unnecessary governmental deprivation of defendant's liberty as well as the potential harm incident to that deprivation. When defendant ultimately received a pretrial-release hearing before a judge, he was promptly released upon a secured bond. This suggests that if he had received this hearing earlier, he would have been released earlier.

Further, providing a domestic-violence arrestee with a pretrial-release hearing before the first available judge, rather than delaying the hearing until the outer limits of the forty-eight-hour prehearing detention limitation under N.C.G.S. § 15A-534.1(b), would involve little or no expense to the State. *See id.* (stating that courts considering a procedural due process challenge to a statute should consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute proce-

dural requirement would entail"). The State incurs the cost of providing a judge, other personnel, and courtroom space, whether the hearing occurs immediately after arrest or later. When the State provides the hearing sooner rather than later, it may save costs incident to further detention.

We now consider the final *FDIC* factor: "the likelihood that the interim decision [to detain defendant] may have been mistaken." *FDIC*, 486 U.S. at 242, 100 L. Ed. 2d at 279. A first magistrate determined that there was probable cause to arrest defendant on a domestic-violence charge based upon the allegations of one individual. A second magistrate ordered defendant detained based solely upon that probable-cause determination. When his case came to trial, defendant pled not guilty and asserted that he did not commit a crime of domestic violence. There is no record evidence establishing definitively whether detention was warranted.

Even assuming that defendant committed the three misdemeanor offenses with which he was charged, defendant might have "irretrievably suffer[ed] the full penalty" for two of those offenses prior to a hearing before a judge. *FDIC*, 486 U.S. at 246, 100 L. Ed. 2d at 282. The three misdemeanor offenses established under N.C.G.S. §§ 14-33(b)(1), (2), and -159.13 were each punishable by a minimum sentence of one day. *See* N.C.G.S. § 15A-1340.23(c)(2) (1997). Here, the application of N.C.G.S. § 15A-534.1(b) left defendant in jail on a Saturday, Sunday, and Monday for a total of almost forty-eight hours. Thus, if defendant had been tried and convicted for each of the three offenses with which he was charged and had received the minimum sentence for each, he would have suffered the full penalty for two of those offenses before the State satisfied its burden of proving his guilt beyond a reasonable doubt. In situations where this is possible, "the State must assure a prompt post-[detention] hearing, 'without appreciable delay.' " *FDIC*, 486 U.S. at 246, 100 L. Ed. 2d at 282 (quoting *Barry v. Barchi*, 443 U.S. 55, 66, 61 L. Ed. 2d 365, 376 (1979)).

Having considered the factors articulated in *FDIC* and *Mathews*, we conclude that the application of N.C.G.S. § 15A-534.1(b) here significantly harmed defendant's fundamental right to liberty when unreasonable delay prevented him from receiving a prompt post-detention hearing before the first available judge regarding the conditions of his pretrial release. Because defendant did not obtain his hearing before a judge regarding his bail and conditions of release "as soon as [was] reasonably feasible," *County of Riverside*, 500 U.S. at 57, 114 L. Ed. 2d at 63, defendant was detained longer than necessary

to serve the State's interest in having a judge, rather than a magistrate, determine the conditions of his pretrial release. As such, defendant was not given an opportunity to be heard "at a meaningful time and in a meaningful manner," *Armstrong*, 380 U.S. at 552, 14 L. Ed. 2d at 66, and the application of N.C.G.S. § 15A-534.1(b) violated his procedural due process rights.

Having determined that N.C.G.S. § 15A-534.1(b)—as applied to defendant under the discrete facts presented here—operated unconstitutionally under established principles of procedural due process, we need not consider defendant's additional arguments that it was unconstitutionally applied to him under principles of substantive due process and double jeopardy as well. We dispose of the case solely upon procedural due process grounds. The constitutional violation deprived defendant of liberty unreasonably, well beyond any time period necessary to serve any governmental interest in detaining him without a hearing for regulatory purposes. It denied him the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong*, 380 U.S. at 552, 14 L. Ed. 2d at 66. The District Court thus correctly dismissed the charges. N.C.G.S. § 15A-954(a)(4).

Accordingly, we reverse the decision of the Court of Appeals and remand the case to that court for further remand to the Superior Court, Durham County, for the entry of an order of dismissal.

REVERSED AND REMANDED.