NO. COA13-1280

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

STATE OF NORTH CAROLINA

    v.

ROBERT LEROY WILLIAMS

Mecklenburg County
Nos. 06 CRS 221584, 221587

Appeal by defendant from order entered 19 August 2013 by Judge Robert C. Ervin in Mecklenburg County Superior Court. Heard in the Court of Appeals 22 April 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Joseph Finarelli, for the State.*
>
> *Appellate Defender Staples Hughes, by Assistant Appellate Defender James R. Grant, for defendant-appellant.*

BRYANT, Judge.

Because continuous monitoring as a result of defendant's participation in a satellite-based monitoring program does not violate defendant's substantive due process rights and because the monitoring is rationally related to a legitimate governmental purpose, we affirm the order of the trial court imposing upon defendant enrollment in a satellite-based monitoring program for his natural life.

On 27 April 2007 in Mecklenburg County Superior Court, defendant Robert Leroy Williams entered an *Alford* plea to two counts of second-degree rape. The State dismissed one count of first-degree sex offense, one count of first-degree kidnapping, one count of second-degree kidnapping, and two counts of first-degree rape. The trial court entered a consolidated judgment in accordance with defendant's plea and sentenced defendant to an active term of 58 to 79 months.

On 27 April 2012, the State filed a motion to determine whether defendant was required to enroll in the sex offender satellite monitoring program. A satellite monitoring bring-back hearing was held before the Honorable Robert C. Ervin on 19 August 2013 during the criminal session of Mecklenburg County Superior Court.

During the hearing, the State presented the following background for defendant's second-degree rape conviction. Defendant and his victim were neighbors. The victim had previously rejected defendant's advances and request for a date. Defendant invited the victim to his residence to watch a video. Once inside, defendant extended a further invitation to view hats in his bedroom. In his bedroom, defendant kissed the victim, and the victim attempted to pull away. Defendant then

produced a knife and later a gun. Defendant forced the victim to perform fellatio and engage in sexual intercourse. When allowed to leave, the victim immediately reported the forced sexual assault.

In an order entered 19 August 2013, the trial court made judicial findings that defendant's conviction for second-degree rape was a reportable conviction as defined by G.S. 14-208.6(4) and that his was an aggravated offense. Defendant was ordered to enroll in satellite-based monitoring for the remainder of his natural life. Defendant appeals.

_____

We first note that although defendant filed a written notice of appeal from the order directing his enrollment in a satellite-based monitoring program, defendant filed with this Court a petition for writ of certiorari to allow review of the trial court order, asserting that his written notice of appeal was defective. Specifically, defendant states that his notice of appeal fails to indicate to which court his appeal was to be taken and that he served his notice on the State via email. For the reasons stated herein, we determine defendant's notice of appeal is not fatally defective; therefore, we deny defendant's

petition for writ of certiorari and proceed to the merits of his appeal.

> Any party entitled by law to appeal from a judgment or order rendered by a judge in superior or district court in a civil action or in a special proceeding may take appeal by giving notice of appeal within the time, in the manner, and with the effect provided in the rules of appellate procedure.

N.C. Gen. Stat. § 1-279.1 (2013). As to the content of the notice of appeal, our Rules of Appellate Procedure state that the notice "shall specify the party or parties taking the appeal; shall designate the judgment or order from which appeal is taken and *the court to which appeal is taken* . . . ." N.C. R. App. P. 3(d) (2013).

"The 'fairly inferred' doctrine ensures that a violation of Rule 3(d) results in dismissal only where the appellee is prejudiced by the appellant's mistake." *Phelps Staffing, LLC v. S.C. Phelps, Inc.*, 217 N.C. App. 403, 410, 720 S.E.2d 785, 791 (2011). In *Phelps Staffing*, the plaintiff failed to designate within the notice of appeal the court to which the appeal was to be taken.

> Plaintiff's notice of appeal does not designate *any* court as the proper venue for its appeal. Plaintiff's error is a complete omission of the content requirement as set forth in Rule 3(d). However, this Court has

> liberally construed this requirement and has specifically held that a plaintiff's failure to designate this Court in its notice of appeal is not fatal to the appeal where the plaintiff's intent to appeal can be fairly inferred and the defendants are not mislead by the plaintiff's mistake.

*Id.* at 410, 720 S.E.2d at 791.

Here, the State's response to defendant's petition for writ of certiorari does not indicate that it was misled by defendant's failure to indicate the court to which the appeal was to be made. The State does not contest defendant's right to appeal and even suggests that despite the cited defects, this Court may grant a writ of certiorari to review the matter.

As to the service of his notice of appeal upon the opposing party, defendant acknowledges that he served his notice of appeal on the State by email.

"The requirement of timely filing and service of notice of appeal is jurisdictional . . . ." *Smith v. Smith*, 43 N.C. App. 338, 339, 258 S.E.2d 833, 835 (1979) (citation omitted). However, a dissenting opinion adopted by our Supreme Court held that "the service of the Notice of Appeal is a matter that may be waived by the conduct of the parties." *Hale v. Afro-Am. Arts Int'l*, 110 N.C. App. 621, 625, 430 S.E.2d 457, 459 (Wynn, J., dissent), *rev'd for the reasons stated in the dissenting*

*opinion*, 335 N.C. 231, 436 S.E.2d 588 (1993). The dissenting opinion proposed that the service of the notice of appeal was akin to the service of a complaint conferring personal jurisdiction upon a trial court. "When the defendant has been duly served with summons personally within the State, or has accepted service *or has voluntarily appeared in court*, jurisdiction over the person exists and the court may proceed to render a personal judgment . . . ." *Id.* at 625, 430 S.E.2d at 460 (citation and quotations omitted). "[B]y analogy . . . where the appellee failed, by motion or otherwise, to raise [an] issue as to service of notice in either the trial court or in this Court and has proceeded to file a brief arguing the merits of the case, . . . [the appellee] has waived service of notice [of appeal] . . . ." *Id.* at 626, 430 S.E.2d at 460.

Here, in its response to defendant's petition, the State acknowledges that defendant's notice of appeal was served via email but does not further contest the service. Furthermore, the State filed a brief addressing the merits of defendant's arguments presented on appeal. Thus, the State has waived service of notice of appeal. *See id.*

Accordingly, as defendant's intent to appeal can be fairly inferred and the State provides no indication it was misled by

the defendant's mistake, we do not dismiss defendant's appeal on the basis of a defect in the notice of appeal. *See Phelps Staffing, LLC*, ___ N.C. App. at ___, 720 S.E.2d at 791. And, as the State has waived service of the notice of appeal, *see Afro-Am. Arts Int'l, Inc.*, 110 N.C. App. at 625, 430 S.E.2d at 460 (Wynn, J., dissent), we deny defendant's petition for writ of certiorari and proceed to the merits of his appeal. *See Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 197—98, 657 S.E.2d 361, 365 (2008) ("A jurisdictional default . . . precludes the appellate court from acting in any manner other than to dismiss the appeal. . . . [However,] [w]e stress that a party's failure to comply with nonjurisdictional rule requirements normally should not lead to dismissal of the appeal." (citations omitted)).

_____

On appeal, defendant argues that the imposition of lifetime satellite-based monitoring violates his substantive due process rights by continuous government monitoring or in the alternative, by failing to be rationally related to the purpose of protecting the public from recidivism.

Defendant first argues that, as applied to him, North Carolina General Statutes, section 14-208.40B(c), violates

substantive due process by impermissibly infringing upon his right to be free from government monitoring of his location when monitoring is not narrowly tailored to the purpose of protecting the public from recidivism, and lifetime monitoring was imposed without consideration of defendant's low risk for reoffending. We disagree.

"An appellate court reviews conclusions of law pertaining to a constitutional matter *de novo*." *State v. Bowditch*, 364 N.C. 335, 340, 700 S.E.2d 1, 5 (2010) (citation omitted).

Pursuant to the United States Constitution, "[n]o State shall make or enforce any law which shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST., amend. XIV, ' 1. The North Carolina Constitution provides that "[n]o person shall be . . . in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. CONST. art. I, § 19. Our Supreme Court has held that "[t]he term 'law of the land' as used in Article I, Section 19, of the Constitution of North Carolina, is synonymous with 'due process of law' as used in the Fourteenth Amendment to the Federal Constitution." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004) (citation and quotations omitted).

The Due Process Clause provides two types of protection – substantive and procedural due process. *See State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998).

> "Substantive due process" protection prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty. "Procedural due process" protection ensures that when government action depriving a person of life, liberty, or property survives substantive due process review, that action is implemented in a fair manner.

*Id.*

> Our established method of substantive-due-process analysis has two primary features: First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest.

*Washington v. Glucksberg*, 521 U.S. 702, 720—21, 138 L. Ed. 2d 772, 787—88 (1997) (citations and quotations omitted). "By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore exercise the utmost care whenever we are asked to

break new ground in this field." *Id.* at 720, 138 L. Ed. 2d at 787 (citation and quotations omitted).

Defendant argues that General Statutes, section 14-208.40B(c), the statute authorizing the court to compel defendant's enrollment in a lifetime satellite-based monitoring ("SBM") program, impermissibly infringes upon his fundamental right to be free from continuous surveillance.

In support of his contention, defendant cites Justice Alito's concurrence in *United States v. Jones*, 565 U.S. ___, 181 L. Ed. 2d 911 (2012). The *Jones* Court considered whether a law enforcement agency's monitoring of a vehicle while on public streets by benefit of an attached GPS locator amounted to a search within the meaning of the Fourth Amendment. The majority concluded that the agency had conducted a search, and because the intrusion occurred in the absence of a valid warrant, it was a violation of Fourth Amendment prohibitions against unreasonable searches and seizures. In his concurrence, Justice Alito proposed that, as opposed to short-term monitoring, long-term GPS monitoring and cataloguing of a vehicle's every movement impinged upon society's expectation of privacy. *Id.* at ___, 181 L. Ed. 2d at 934 (Alito, J., concurrence). We note that as to the application of the Fourth Amendment in the

context of SBM, our Court has declared *United States v. Jones* to be inapposite. *See State v. Jones*, ___ N.C. App. ___, ___, 750 S.E.2d 883, 886 (2013) (citing *State v. Martin*, ___ N.C. App. ___, 735 S.E.2d 238 (2012) (holding SBM is not a violation of the defendant's Fourth Amendment right to be free from unreasonable searches and seizures)).

We also note that in *United States v. Jones*, the Court was analyzing an event that took place in the context of a law enforcement agency's investigation of narcotics trafficking. The concerns articulated in Justice Alito's concurrence are distinguishable from the circumstance for which defendant seeks our review: the continuous monitoring of a person who has been convicted and sentenced for an aggravated offense, as defined by section 14-208.6. *See* N.C. Gen. Stat. ' 14-208.6(1a) (2013) ("'Aggravated offense' means any criminal offense that includes either of the following: (i) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim of any age through the use of force or the threat of serious violence; or (ii) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim who is less than 12 years old.").

Defendant's participation in an SBM program following his conviction for an aggravated offense – forcible rape – does not

infringe upon any fundamental right. *See Jones*, ___ N.C. App. ___, 750 S.E.2d 883; *Martin*, ___ N.C. App. ___, 735 S.E.2d 238. Defendant's asserted "fundamental right to be free from continuous government surveillance" is not one we have ever recognized in the context of SBM. On the contrary, "an imposition of restrictive measures on sex offenders adjudged to be dangerous is a legitimate nonpunitive governmental objective and has been historically so regarded." *State v. Bare*, 197 N.C. App. 461, 467, 677 S.E.2d 518, 524 (2009) (citation and quotations omitted). Therefore, defendant cannot establish that his participation in an SBM program infringes upon a fundamental right. We overrule this portion of defendant's substantive due process argument.

However, defendant argues in the alternative that General Statutes section 14-208.40B(c) as applied to him violates substantive due process because it is not rationally related to its purpose of protecting the public from recidivism. Defendant contends that because section 14-208.40B(c) authorizes mandatory lifetime participation without consideration of defendant's risk of reoffending, the statute is constitutionally unsound. We disagree.

"[U]nless legislation involves a suspect classification or impinges upon fundamental personal rights, it is presumed constitutional and need only be rationally related to a legitimate state interest." *Huntington Prop., LLC v. Currituck Cnty.*, 153 N.C. App. 218, 229, 569 S.E.2d 695, 703 (2002) (citation and quotations omitted). "[T]he rational basis standard . . . 'merely' requires that a regulation bear some rational relationship to a conceivable legitimate interest of government." *Bald Head Island, Ltd. v. Vill. of Bald Head Island*, 175 N.C. App. 543, 550, 624 S.E.2d 406, 410—11 (2006) (citation and quotations omitted).

Defendant cites *South Carolina v. Dykes*, 744 S.E.2d 505 (S.C. 2013), for the proposition that South Carolina's SMB statute was deemed unconstitutional to the extent that it imposed upon the defendant lifetime SBM without (1) a determination of her dangerousness prior to being enrolled or (2) an opportunity for judicial review at a later date to address the necessity of her remaining enrolled in the program. The South Carolina Court held that "[i]n light of the [South Carolina] General Assembly's stated purpose of protecting the public from sex offenders and aiding law enforcement, we find that the initial mandatory imposition of satellite monitoring

for certain child-sex crimes satisfies the rational relationship test." *Id.* at 510. However, "[t]he complete absence of any opportunity for judicial review to assess a risk of re-offending . . . is arbitrary and cannot be deemed rationally related to the legislature's stated purpose of protecting the public from those with a high risk of re-offending." *Id.* (citation omitted).

Because our North Carolina statutory scheme provides for both a determination of dangerousness prior to imposing enrollment in a satellite-based monitoring program *and* the possibility for review for later termination from satellite-based monitoring, any analysis of *Dykes*, 744 S.E.2d 505, is inapposite. We now look to relevant North Carolina General Statutes regarding satellite-based monitoring.

Pursuant to section 14-208.40B(c), when an offender is convicted of a reportable conviction as defined by G.S. 14-208.6(4), the district attorney, representing the Division of Adult Correction, shall schedule a hearing in superior court.

> [In this hearing,] the court shall determine if the offender falls into one of the categories described in G.S. 14-208.40(a). The court shall hold the hearing and make findings of fact pursuant to G.S. 14-208.40A.
>
> If the court finds that (i) the offender has

> been classified as a sexually violent predator pursuant to G.S. 14-208.20, (ii) the offender is a recidivist, (iii) the conviction offense was an aggravated offense, or (iv) the conviction offense was a violation of G.S. 14-27.2A or G.S. 14-27.4A, the court shall order the offender to enroll in satellite-based monitoring for life.

N.C. Gen. Stat. § 14-208.40B(c).

Defendant does not contest that his was a "reportable conviction" as defined by section 14-208.6(4). *See id.* § 14-208.6(4)(a.) ("'Reportable conviction' means: 'A final conviction for an offense against a minor, a sexually violent offense, or an attempt to commit any of those offenses unless the conviction is for aiding and abetting.'"). Defendant also does not challenge the trial court's finding that his was an aggravated offense. *See id.* ' 14-208.6(1a) ("'Aggravated offense' means any criminal offense that includes either of the following: (i) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim of any age through the use of force or the threat of serious violence . . . ."). Defendant's argument is limited to a purported failure of the North Carolina SBM scheme, as applied here, to assess defendant's risk of reoffending before imposing lifetime SBM and an inadequate process for petitioning to be removed from SBM.

In *State v. Bowditch*, our Supreme Court stated that "[t]he legislature's intent in establishing SBM may be inferred from the declaration in the authorizing legislation that it 'shall be known as "An Act To Protect North Carolina's Children/Sex Offender Law Changes."' Ch. 247, sec. 1(a), 2006 N.C. Sess. Laws at 1066." 364 N.C. 335, 342, 700 S.E.2d 1, 6 (2010). The Court reasoned that it was the intent of our legislature "to protect our State's children from the recidivist tendencies of convicted sex offenders . . . ." *Id.*

Pursuant to section 14-208.40(a),

> [t]he [SBM] program shall be designed to monitor . . . offenders as follows:
>
> (1) Any offender who is convicted of a reportable conviction as defined by G.S. 14-208.6(4) and who is required to register under Part 3 of Article 27A of Chapter 14 of the General Statutes because the defendant is classified as a sexually violent predator, is a recidivist, or was convicted of an aggravated offense as those terms are defined in G.S. 14-208.6.

N.C. Gen. Stat. § 14-208.40(a)(1) (2013).

It would appear that our General Assembly has determined that an offender convicted of a particular classification of crimes is to be subject to lifetime satellite-based monitoring. Implicit in this statutory scheme is a recognition of an offender's risk of re-offending if he has committed a certain

type of offense.  This defendant, by statute, is subject to SBM for life.  Further, the statutory scheme provides that if the court finds the offense committed is not an aggravated offense (along with other exceptions) *and* the offender is not a recidivist, the court shall conduct a risk assessment to determine whether and for what period of time a defendant should be subject to SBM.  *See id.* ' 14-208.40A(d),(e).  Similar to the South Carolina policy to protect the public from sex offenders as stated by the *Dykes* Court, the North Carolina policy set forth in the SMB statutes is the same, and therefore, we believe the imposition of SBM to be rationally related to the purpose of protecting children and the more general public.  *See K-Mart Corp.*, 358 N.C. at 180—81, 594 S.E.2d at 15 ("[T]he rational basis test or rational basis review applies, and this Court must inquire whether distinctions which are drawn by a challenged statute ... bear some rational relationship to a conceivable legitimate governmental interest. Rational basis review is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so

attenuated as to render the distinction arbitrary or irrational." (citation and quotations omitted)).

In further response to defendant's argument that there is an inadequate process for petitioning to be removed from SBM, we note that our General Assembly has provided an avenue for petitioners seeking removal from SBM. Per General Statutes, section 14-208.43, "Request for termination of satellite-based monitoring requirement,"

> [a]n offender described by G.S. 14-208.40(a)(1) or G.S. 14-208.40(a)(3) who is required to submit to satellite-based monitoring for the offender's life *may file a request for termination of monitoring requirement with the Post-Release Supervision and Parole Commission.* The request to terminate the satellite-based monitoring requirement and to terminate the accompanying requirement of unsupervised probation may not be submitted until at least one year after the offender: (i) has served his or her sentence for the offense for which the satellite-based monitoring requirement was imposed, and (ii) has also completed any period of probation, parole, or post-release supervision imposed as part of the sentence.

N.C. Gen. Stat. § 14-208.43(a) (2013). Again, we hold the imposition of SBM as applied to defendant is rationally related to the purpose of protecting children and the general public and does not impermissibly infringe upon defendant's due process rights. Accordingly, defendant's arguments are overruled.

Affirmed.

Judges HUNTER, Robert C., and STEELMAN concur.