STATE OF NORTH CAROLINA v. ERIC EARL GUICE

No. COA99-1261

(Filed 29 December 2000)

**1. Kidnapping— second degree—purpose of terrorizing victim—sufficiency of evidence**

The trial court did not err by denying a kidnapping defendant's motion to dismiss for insufficient evidence where the indictment alleged that defendant had acted for the specific purpose of terrorizing the victim, so that the jury could convict on that issue only, and the evidence was that defendant called the victim twice and entered her home uninvited and unannounced despite her threats to call the police; defendant repeatedly punched the vic-

---

STATE v. GUICE

[141 N.C. App. 177 (2000)]

tim in the face, pointed a gun at her face, and demanded the gun she kept in her house; she complied with that demand, then fled, clad only in a tee shirt, to a neighbor's house; defendant pursued her there and entered the house, pointing a gun at the the homeowner, who was a total stranger, and forcing him to lie on the floor; defendant pushed a table against the victim, choked her, and dragged her outside; defendant finally left after the victim implored him to do so; and the victim suffered multiple bumps on the head, bruises on her arms, and fractured ribs.

**2. Sentencing— firearm enhancement—underlying crimes— use of firearm not an essential element**

The trial court did not err by enhancing a second-degree kidnapping defendant's sentence based upon use of a firearm where defendant argued that use of the gun was necessary to the essential element of terrorizing the victim and that defendant was contemporaneously convicted of possession of a firearm by a convicted felon and assault by pointing a gun. Use of a firearm is not an essential element of second-degree kidnapping, regardless of the purpose alleged. As for the firearm-related convictions, all of the convictions were consolidated under the second-degree kidnapping conviction, for which defendant was sentenced.

**3. Criminal Law— motion for appropriate relief on appeal— proper**

A motion for appropriate relief was properly before the Court of Appeals where a kidnapping defendant asserted that a United States Supreme Court decision represented a significant change in the law applied in his sentencing and that retroactive application of the changed legal standard was required.

**4. Sentencing— firearm enhancement—underlying facts not alleged**

A kidnapping defendant's argument that the trial court was without jurisdiction to impose the 60-month firearm enhancement because the facts underlying the enhancement were not alleged in the indictment was without merit. Neither *Apprendi v. New Jersey*, 147 L. Ed. 2d 435 (2000), nor any other United States Supreme Court case, nor any binding case law from other federal courts or North Carolina courts command such an outcome under either the United States or the North Carolina constitutions.

**5. Sentencing— firearm enhancement—statute violates due process**

A kidnapping defendant's motion for appropriate relief in the Court of Appeals was granted insofar as it requested a determination that the firearm sentencing enhancement is facially unconstitutional. The statute removed from the jury the assessment of facts that increase the prescribed range of penalties to which the criminal defendant is exposed and is facially unconstitutional as violative of due process. N.C.G.S. § 15A-1340.16A

**6. Evidence— hearsay—excited utterance exception—statement by victim to officer at scene**

The trial court did not err in a kidnapping prosecution by allowing the State on three occasions to present an alleged hearsay statement by the victim where the statement was made by the victim to an officer when he first arrived on the scene, within several minutes of defendant dragging the victim from a house. She was crying and so terrified she was having difficulty breathing; her statement to the officer was properly admitted as an excited utterance.

**7. Evidence— victim's written statement—corroboration—read by officer**

The trial court did not err in a kidnapping prosecution by allowing into evidence a written statement from the victim where the statement was admitted for the limited purpose of corroborating the victim's testimony rather than as substantive evidence. Furthermore, it was not improper for the officer who took the statement to read a redacted version aloud; the declarant is not the only party entitled to read aloud a prior consistent statement that corroborates her in-court testimony.

**8. Evidence— prior bad act—extrinsic evidence**

There was no reversible or plain error in a kidnapping prosecution where the trial refused to allow defendant to introduce evidence that the victim had previously let the air out of the tires of defendant's vehicle. Defendant sought to elicit this testimony on direct examination from defendant's sister and did not question the victim concerning this incident during cross-examination.

STATE v. GUICE

[141 N.C. App. 177 (2000)]

Appeal by defendant from judgment entered 22 June 1999 by Judge Loto G. Caviness in Superior Court, Mecklenburg County. Heard in the Court of Appeals 20 September 2000.

*Attorney General Michael F. Easley, by Special Deputy Attorney General James P. Longest, Jr., for the State.*

*Rudolf Maher Widenhouse & Fialko, by Christopher C. Fialko, for the defendant-appellant.*

WYNN, Judge.

Following his trial, a jury convicted the defendant of various offenses stemming from events which occurred on 19 July 1998. He appeals from his conviction and sentence.

In the summer of 1997, the defendant met and befriended Kris Wall. Around November of that year, Ms. Wall separated from her husband. The nature of the relationship between the defendant and Ms. Wall is controverted; but, the record on appeal shows that Ms. Wall made attempts to end their relationship sometime during the late spring or early summer of 1998. In May 1998, Ms. Wall gave birth to a son.

On 19 July 1998, the defendant called Ms. Wall around 5 a.m. and again around 10:30 a.m. Shortly thereafter, the defendant arrived at Ms. Wall's house, entering unannounced and uninvited, and confronted her. The two argued and Ms. Wall fled from her house, with the defendant in pursuit. Clothed only in a t-shirt, Ms. Wall ran into the home of Michael Lawing, whose front door was open, and the defendant followed her inside. While pointing a gun at Mr. Lawing, the defendant ordered Mr. Lawing to lie face down on the floor. After Mr. Lawing complied with this order, the defendant and Ms. Wall continued to argue in Mr. Lawing's house.

The defendant then dragged Ms. Wall outside. After Ms. Wall refused to leave with the defendant, he retrieved his keys from Ms. Wall's house and departed. Shortly thereafter, John Ruisi, a police officer employed with the Charlotte-Mecklenburg Police Department, arrived and spoke with Ms. Wall. The defendant called Ms. Wall and spoke with Officer Ruisi. Officer Ruisi later took Ms. Wall to the hospital, where he prepared a written statement for her which she signed. The defendant turned himself in later that day.

STATE v. GUICE

[141 N.C. App. 177 (2000)]

In August 1998, the defendant was indicted for multiple offenses, including assault by pointing a gun, communicating threats, assault on a female, damage to personal property, and possession of a firearm by a felon. In June 1999, the defendant was indicted for second-degree kidnaping under a superceding indictment arising out of the same events. At the close of the State's evidence, the trial court dismissed the damage to personal property charge but denied the defendant's motion to dismiss the charge of second-degree kidnaping. On 22 June 1999, the jury returned verdicts of guilty on the remaining charges and the trial court entered judgment accordingly. After consolidating the cases under the second-degree kidnaping charge for sentencing purposes, the trial court enhanced the defendant's sentence for the kidnaping conviction under the firearm enhancement statute, N.C. Gen. Stat. § 15A-1340.16A (Supp. 1996).

The defendant appealed, asserting as assignments of error that the trial court erred in: (1) denying his motion to dismiss the charge of second-degree kidnaping; (2) enhancing his sentence on the count of second-degree kidnaping under the firearm enhancement provision found in N.C. Gen. Stat. § 15A-1340.16A; (3) allowing into evidence alleged hearsay statements of Ms. Wall; and (4) refusing to permit him to introduce evidence of a specific prior bad act of Ms. Wall. The defendant has also filed a motion for appropriate relief in light of the United States Supreme Court's recent decisions in *Apprendi v. New Jersey*, 530 U.S. ——, 147 L. Ed. 2d 435 (2000), and *Jones v. United States*, 526 U.S. 227, 143 L. Ed. 2d 311 (1999). We find no error in the trial, but remand for resentencing.

[1] First, the defendant argues that the State failed to prove the specific intent necessary to support a conviction for second-degree kidnaping; specifically, that he unlawfully confined, restrained or removed Ms. Wall for the purpose of terrorizing her. We disagree.

As kidnaping is a specific intent crime, the State bears the burden of proving that the defendant "unlawfully confined, restrained, or removed the [victim] for one of the eight purposes set out in the statute." *State v. Moore*, 315 N.C. 738, 743, 340 S.E.2d 401, 404 (1986); *see* N.C. Gen. Stat. § 14-39 (Supp. 1996). "The indictment in a kidnaping case must allege the purpose or purposes upon which the State intends to rely, and the State is restricted at trial to proving the purposes alleged in the indictment." *Moore*, 315 N.C. at 743, 340 S.E.2d at 404.

N.C. Gen. Stat. § 14-39 provides in relevant part that:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of: . . .

(3) [T]errorizing the person so confined, restrained or removed . . . ;

(b) There shall be two degrees of kidnapping as defined by subsection (a). . . . If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

N.C. Gen. Stat. § 14-39. The superceding indictment for second-degree kidnaping in the present case stated the following:

The jurors for the State upon their oath present that on or about the 19th day of July, 1998, in Mecklenburg County, Eric Earl Guice did unlawfully, wilfully and feloniously kidnap Kris Lavanta Wall, a person who had attained the age of sixteen (16) years, by unlawfully confining, restraining and removing her from one place to another, without her consent, and for the purpose of terrorizing.

The State was therefore limited at trial to proving that the defendant acted with the specific purpose of terrorizing Ms. Wall, and the jury was only allowed to convict the defendant on that theory. *See Moore*, 315 N.C. at 743, 340 S.E.2d at 404; *see also State v. Taylor*, 304 N.C. 249, 283 S.E.2d 761 (1981), *cert. denied*, 463 U.S. 1213, 77 L. Ed. 2d 1398, *reh'g denied*, 463 U.S. 1249, 77 L. Ed. 2d 1456 (1983).

In reviewing the trial court's denial of the defendant's motion to dismiss for insufficiency of the evidence to sustain a conviction, "we must examine the evidence adduced at trial in the light most favorable to the State to determine if there is substantial evidence of every essential element of the crime." *State v. McKinnon*, 306 N.C. 288, 298, 293 S.E.2d 118, 125 (1982). Substantial evidence is that which a reasonable person would consider adequate to support the conclusion that each essential element exists. *Id.* In short, we must determine "whether any rational trier of fact could have found the essential ele-

ments of the crime beyond a reasonable doubt." *State v. Barnette*, 304 N.C. 447, 458, 284 S.E.2d 298, 305 (1981) (citations omitted).

In determining whether there was sufficient evidence to support the jury's conclusion that the defendant sought to terrorize Ms. Wall, "the test is not whether subjectively [Ms. Wall] was in fact terrorized, but whether the evidence supports a finding that the defendant's purpose was to terrorize her." *Moore*, 315 N.C. at 745, 340 S.E.2d at 405. Terrorizing requires more than just putting Ms. Wall in a state of fear; it requires "putting [her] in some high degree of fear, a state of intense fright or apprehension." *Id.* (citing *State v. Jones*, 36 N.C. App. 447, 244 S.E.2d 709 (1978)). The defendant's intent or purpose to terrorize Ms. Wall, or the absence of such intent or purpose, may be inferred from the circumstances surrounding the alleged crime. *State v. White*, 307 N.C. 42, 48, 296 S.E.2d 267, 271 (1982).

When viewed in the light most favorable to the State, the evidence presented at trial showed that the defendant called Ms. Wall twice and entered her home uninvited and unannounced despite her threats to call the police. Ms. Wall testified that the defendant punched her repeatedly in the face and pointed a gun in her face, and demanded that she give him the gun she kept in her house. After she complied with this demand, Ms. Wall—clothed only in a t-shirt—fled to Mr. Lawing's house, where she was pursued and tracked down by the defendant. The defendant entered Mr. Lawing's house in pursuit of Ms. Wall, pointed a gun at him—a total stranger—and forced him to lie down on the floor. The defendant struggled further with Ms. Wall, pushed a table against her, choked her, and dragged her outside. After Ms. Wall again implored the defendant to leave, the defendant finally departed. During the course of the struggle with the defendant, Ms. Wall suffered multiple bumps on her head, bruises on her arms, and fractured ribs. We conclude that the State presented substantial evidence from which a rational trier of fact could have found beyond a reasonable doubt that the defendant acted with the purpose of terrorizing Ms. Wall.

[2] The defendant next contends that the trial court erred by enhancing his sentence for the second-degree kidnaping conviction as a result of his use of a firearm during the crime. Upon the jury returning guilty verdicts on all charges, the trial court held a sentencing hearing and consolidated all charges under the second-degree kidnaping charge for sentencing purposes. The trial court sentenced the defendant to a minimum term of 29 months imprisonment for the kid-

naping conviction, and enhanced the sentence, citing N.C. Gen. Stat. § 15A-1340.16A, by 60 additional months for a minimum of 89 months imprisonment.

N.C. Gen. Stat. § 15A-1340.16A provides in part that:

(a) If a person is convicted of a Class . . . E felony and the court finds that the person used, displayed, or threatened to use or display a firearm at the time of the felony, the court shall increase the minimum term of imprisonment to which the person is sentenced by 60 months.

Second-degree kidnaping constitutes a Class E felony. *See* N.C. Gen. Stat. § 14-39. Subsection (b) of N.C. Gen. Stat. § 15A-1340.16A provides:

Subsection (a) of this section does not apply in any of the following circumstances:

. . .

(2) The evidence of the use, display, or threatened use or display of a firearm is needed to prove an element of the underlying . . . felony.

The defendant argues that the trial court's enhancement of the defendant's sentence for second-degree kidnaping under N.C. Gen. Stat. § 15A-1340.16A was improper as the use of the gun by the defendant was necessary for the State to prove the essential element of terrorizing to support the kidnaping charge. Alternatively, the defendant argues that the trial court improperly enhanced the sentence on the second-degree kidnaping charge for using a firearm when he was contemporaneously convicted on charges of possession of a firearm by a convicted felon and assault by pointing a gun. As to both theories, we disagree.

As to the defendant's first theory, we note that the use of a firearm is not an essential element of the crime of second-degree kidnaping, regardless of the purpose alleged. *See* N.C. Gen. Stat. § 14-39. Therefore, the State need not have shown that the defendant used, displayed, or threatened to use or display a firearm to prove that he intended to terrorize Ms. Wall. As our Supreme Court has stated, "[b]ecause the use or display of a firearm is not an essential element of second-degree kidnapping, the trial court was not precluded from relying on evidence of defendant's use of the firearm and enhancing defendant's term of imprisonment pursuant to the firearm enhance-

ment section." *State v. Ruff*, 349 N.C. 213, 216-17, 505 S.E.2d 579, 581 (1998).

As for the defendant's alternative argument that his "contemporaneous convictions" on firearm-related charges prevents the use of the firearm as a sentence-enhancement factor, we again disagree. First, we note that the defendant's convictions were consolidated by the trial court under the second-degree kidnaping charge, for which conviction he was sentenced. The defendant cites *State v. Lattimore*, 310 N.C. 295, 311 S.E.2d 876 (1984) for the proposition that a defendant's sentence cannot be enhanced by factors that are based on joined offenses of which the defendant has been contemporaneously convicted. However, as was noted in *Ruff*, the *Lattimore* case was,

> decided under the former Fair Sentencing Act, N.C.G.S. ch. 15A, art. 81A (1988). However, our legislature has since repealed the Fair Sentencing Act. Act of July 24, 1993, ch. 538, sec. 14, 1993 N.C. Sess. Laws 2298, 2318. Since defendant was found guilty and sentenced for crimes occurring after 1 October 1994, the Structured Sentencing Act, N.C.G.S. ch. 15A, art. 81B (1997), provides the controlling law. N.C.G.S. § 15A-1340.10 (1997).

*Ruff*, 349 N.C. at 216, 505 S.E.2d at 580. Similarly, in the instant case the defendant was convicted and sentenced for crimes occurring after 1 October 1994, so the Structured Sentencing Act controls. As was noted in *Ruff*, N.C. Gen. Stat. § 15A-1340.16A(a) does not apply where "[t]he evidence of the use, display, or threatened use or display of a firearm is needed to prove an element of the underlying . . . felony." *See id.* (quoting N.C. Gen. Stat. § 15A-1340.16A(b)(2)). The underlying felony in the instant case, as in *Ruff*, is second-degree kidnaping, of which the use or display of a firearm is not an essential element. *See Ruff*, 349 N.C. at 216-17, 505 S.E.2d at 581. The trial court therefore committed no error in using the firearm enhancement provision to enhance the defendant's sentence on the charge of second-degree kidnaping. *See id.*

The defendant also challenges the constitutionality of the firearm enhancement provision in his motion for appropriate relief. According to the defendant, the recent holdings by the United States Supreme Court in *Jones v. United States*, 526 U.S. 227, 143 L. Ed. 2d 311 (1999), and *Apprendi v. New Jersey*, 530 U.S. ——, 147 L. Ed. 2d 435 (2000), render N.C. Gen. Stat. § 15A-1340.16A unconstitutional on its face, and additionally argues that the statute was unconstitution-

ally applied to the defendant in the instant case. In support of his argument, the defendant also cites the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 19 and 23 of the North Carolina Constitution. We agree that the firearm enhancement statute is facially unconstitutional pursuant to the Supreme Court's holding in *Apprendi*, under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**[3]** We first point out that the defendant's motion for appropriate relief is properly before this Court. N.C. Gen. Stat. § 15A-1418(a) (1999); *State v. Brock*, 46 N.C. App. 120, 264 S.E.2d 390 (1980); N.C. Gen. Stat. § 15A-1415 (1999). He asserts in his motion that the *Apprendi* decision is a Constitutional ruling and, as such, represents "a significant change in law" that was applied by the trial court in sentencing him, such that "retroactive application of the changed legal standard is required." N.C. Gen. Stat. § 15A-1415(b)(7) (1999). The defendant further asserts that he was "sentenced under a statute that was in violation of the Constitution of the United States or the Constitution of North Carolina." N.C. Gen. Stat. § 15A-1415(b)(4) (1999). Accepting the defendant's assertions as true, *arguendo*, we consider the defendant's motion for appropriate relief. We also note that *Apprendi* was decided on 26 June 2000, while this case was on direct review; as such, *Apprendi* applies here. *See Teague v. Lane*, 489 U.S. 288, 302-03, 103 L. Ed. 2d 334, 350-51 (1989) ("new rules should *always* be applied retroactively to cases on direct review, but . . . generally they should not be applied retroactively to cases on collateral review"); *State v. Green*, 350 N.C. 400, 405, 514 S.E.2d 724, 727 (1999).

Article I, Section 19 of the North Carolina Constitution provides the basis for due process in North Carolina:

> No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

N.C. Const. art I, § 19. Our courts have long held that "[t]he 'law of the land' clause has the same meaning as 'due process of law' under the Federal Constitution." *Summey Outdoor Advertising, Inc. v. County of Henderson*, 96 N.C. App. 533, 541, 386 S.E.2d 439, 444, *disc. review denied*, 326 N.C. 486, 392 S.E.2d 101 (1989); *see also State v. Jones*,

305 N.C. 520, 290 S.E.2d 675 (1982); *State v. Smith*, 90 N.C. App. 161, 368 S.E.2d 33 (1988), *aff'd*, 323 N.C. 703, 374 S.E.2d 866, *cert. denied*, 490 U.S. 1100, 104 L. Ed. 2d 1007 (1989) (the term "law of the land" in art. I, § 19 of the North Carolina Constitution is synonymous with "due process of law" as that term is used in the Fourteenth Amendment of the United States Constitution). Nonetheless, federal court interpretations (including those of the United States Supreme Court) of due process under the Fourteenth Amendment of the United States Constitution, while highly persuasive, are not binding in construing the "law of the land" clause under N.C. Const. art I, § 19. *Armstrong v. Armstrong*, 85 N.C. App. 93, 97, 354 S.E.2d 350, 353 (1987), *rev'd on other grounds*, 322 N.C. 396, 368 S.E.2d 595 (1988); *see also Smith*, 90 N.C. App. at 163, 368 S.E.2d at 35; *Bentley v. North Carolina Ins. Guar. Ass'n*, 107 N.C. App. 1, 9, 418 S.E.2d 705, 709 (1992); *Lorbacher v. Housing Auth. of City of Raleigh*, 127 N.C. App. 663, 674-75, 493 S.E.2d 74, 81 (1997). It is axiomatic that our "State constitutional due process requirements may be more expansive than the minimal due process requirements of the United States Constitution," *Wake County ex rel. Carrington v. Townes*, 53 N.C. App. 649, 650 n. 1, 281 S.E.2d 765, 766-67 n. 1 (1981), but that our state due process requirements under N.C. Const. art. I, § 19 must equal or surpass those imposed under U.S. Const. amend. XIV. Therefore, to comport with our state due process requirements, a statute must, at the least, meet the due process requirements under U.S. Const. amend. XIV. We therefore begin our analysis with a review of Fourteenth Amendment due process requirements.

The term "due process" has a dual significance, insofar as it "provides two types of protection for individuals against improper governmental action." *State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998); *see also State v. Smith*, 265 N.C. 173, 180, 143 S.E.2d 293, 299 (1965); *In re Moore*, 289 N.C. 95, 101, 221 S.E.2d 307, 311 (1976). First,

> "Substantive due process" protection prevents the government from engaging in conduct that "shocks the conscience," . . . or interferes with rights "implicit in the concept of ordered liberty."

*Thompson*, 349 N.C. at 491, 508 S.E.2d at 282 (citations omitted); *see also Smith*, 265 N.C. at 180, 143 S.E.2d at 299; *Moore*, 289 N.C. at 101, 221 S.E.2d at 311. Second,

> "Procedural due process" protection ensures that when government action depriving a person of life, liberty, or property sur-

vives substantive due process review, that action is implemented in a fair manner.

*Id.* (citations omitted).

An individual's liberty interest is substantial, and due process must be afforded when a state seeks to deprive an individual of that liberty interest. *See Townes,* 53 N.C. App. at 650, 281 S.E.2d at 767. Substantive due process "may be characterized as a standard of reasonableness, and as such it is a limitation upon the exercise of the police power." *Smith,* 265 N.C. at 180, 143 S.E.2d at 299 (citations omitted). "The traditional substantive due process test has been that a statute must have a rational relation to a valid state objective." *Moore,* 289 N.C. at 101, 221 S.E.2d at 311. Substantive due process, therefore, provides "a guaranty against arbitrary legislation, demanding that the law be substantially related to the valid object sought to be obtained." *Lowe v. Tarble,* 313 N.C. 460, 461, 329 S.E.2d 648, 650 (1985) (citing *State v. Joyner,* 286 N.C. 366, 211 S.E.2d 320 (1975)); *see State v. Killian,* 37 N.C. App. 234, 245 S.E.2d 812 (1978). Thus, we may not invoke Fourteenth Amendment substantive due process to overturn N.C. Gen. Stat. § 15A-1340.16A if there is some rational basis for the enactment of the statute. *Tarble,* 313 N.C. at 462, 329 S.E.2d at 650.

The defendant in this case does not contest—and indeed we hold—that the General Assembly had a reasonable basis for enacting N.C. Gen. Stat. § 15A-1340.16A. "[T]he governmental objectives of the statute are legitimate and permissible. The legislation is not arbitrary and is substantially related to the legislative goals." *Id.*; *see Apprendi,* 530 U.S. at ——, 147 L. Ed. 2d at 446 ("The strength of the state interests that are served by the . . . legislation has no more bearing on this procedural question than the strength of the interests served by other provisions of the criminal code.").

As the substantive basis for the firearm enhancement statute is not at issue, we consider whether the statute comports with Fourteenth Amendment procedural due process requirements. *See Townes,* 53 N.C. App. at 651, 281 S.E.2d at 767 ("the touchstone of due process is the presence of fundamental fairness in any judicial proceeding adversely affecting the interests of an individual"). The United States Supreme Court's decisions in *Jones* and *Apprendi* are particularly instructive in analyzing this aspect of the North Carolina firearm enhancement statute, and we consider each decision in detail.

At issue in *Jones* was the federal carjacking statute, 18 U.S.C. § 2119 (1988 ed., Supp. V), and in particular certain provisions of the statute that established higher penalties to be imposed when the proscribed conduct resulted in serious bodily injury or death. The United States Supreme Court considered whether the fact of resulting serious bodily injury or death was a mere sentencing factor, or rather an additional element of the offense that must be charged in the indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict. 526 U.S. at 232, 143 L. Ed. 2d at 319 ("Much turns on the determination that a fact is an element of an offense rather than a sentencing consideration, given that elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt.") In a footnote, the United States Supreme Court stated the principle underlying its view, "that the carjacking statute, as construed by the Government, may violate the Constitution," *id.* at 243, 143 L. Ed. 2d at 326, as follows:

> [U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. Because our prior cases suggest rather than establish this principle, our concern about the Government's reading of the statute rises only to the level of doubt, not certainty.

*Id.* at 243 n. 6, 143 L. Ed. 2d at 326 n. 6. Early in its opinion, the United States Supreme Court expressed skepticism toward the government's reading of the statute, stating that "[i]t is at best questionable whether the specification of facts sufficient to increase a penalty range . . . was meant to carry none of the process safeguards that elements of an offense bring with them for a defendant's benefit." *Id.* at 233, 143 L. Ed. 2d at 319-20.

However, the United States Supreme Court recognized the possibility of two differing views of the carjacking statute: The construction advocated by the government, urging that the fact of "serious bodily harm" or death under the statute is a mere sentencing factor, and the opposing view treating the fact of such harm or death as an element of an offense. With these differing views in mind, the United States Supreme Court noted the rule that " 'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such ques-

tions are avoided, our duty is to adopt the latter.' " *Id.* at 239, 143 L. Ed. 2d at 324 (quoting *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408, 53 L. Ed. 2d 836, 849 (1909)).

As the construction advocated by the government would "open [the statute] to constitutional doubt in light of a series of cases over the past quarter century, dealing with due process and the guarantee of trial by jury," *id.* at 240, 143 L. Ed. 2d at 324, the United States Supreme Court instead adopted what it deemed the "fairest reading" of the statute, *id.* at 239, 143 L. Ed. 2d at 324, construing "serious bodily harm" as a distinct element of a separate offense from the carjacking offense, "which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict." *Id.* at 251-52, 143 L. Ed. 2d at 331. The United States Supreme Court thereby avoided ruling on the constitutionality of the carjacking statute, instead remanding the case for further consistent proceedings. *Id.* ("Any doubt on the issue of statutory construction is hence to be resolved in favor of avoiding [the serious constitutional] questions" raised by the government's view).

In *Apprendi*, the United States Supreme Court considered a challenge to New Jersey's hate-crime statute, which provided for sentence enhancement if the trial judge found, by a preponderance of the evidence, that the defendant acted to intimidate on the basis of "race, color, gender, handicap, religion, sexual orientation or ethnicity." 530 U.S. at ——, 147 L. Ed. 2d at 442 (citing N.J. Stat. Ann. § 2C:44-3(e) (West Supp. 2000)). At the outset, the United States Supreme Court in *Apprendi* noted that "constitutional protections of surpassing importance" were at stake therein, including the Fourteenth Amendment "proscription of any deprivation of liberty without 'due process of law,' " as well as the Sixth Amendment guarantee to an accused in a criminal prosecution of " 'the right to a speedy and public trial, by an impartial jury.' " *Id.* at ——, 147 L. Ed. 2d at 447. "Taken together, these rights indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " *Id.* at ——, 147 L. Ed. 2d at 447 (quoting *United States v. Gaudin*, 515 U.S. 506, 510, 132 L. Ed. 2d 444, 449 (1995)). The question before the United States Supreme Court was to what extent the same procedural protections should extend to facts which, while not formally defined by the legislature as "elements" of an offense, nonetheless increase the maximum statutory penalty to which a defendant may be subjected.

STATE v. GUICE

[141 N.C. App. 177 (2000)]

The United States Supreme Court elevated the above-quoted language in *Jones* from dicta to the status of constitutional law with respect to state prosecutions of state offenses, finding that New Jersey's hate-crime statute violated due process. In so doing, it held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at ——, 147 L. Ed. 2d at 455. Following its discussion of the historical underpinnings of the constitutional guarantees of due process and trial by jury, the United States Supreme Court stated:

> We should be clear that *nothing* in this history *suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute.* We have often noted that judges in this country have long exercised *discretion* of this nature in imposing sentence *within statutory limits* in the individual case.

530 U.S. at ——, 147 L. Ed. 2d at 449 (emphasis added in part). Thus, the rule set forth in *Apprendi* is not violated unless the trial court, following its discretionary consideration of factors relating to both the offense and the offender, imposes a penalty that exceeds the maximum the defendant could receive, by statute, for the particular underlying offense. The United States Supreme Court stated the relevant inquiry as so: "[D]oes the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* at ——, 147 L. Ed. 2d at 457.

[4] The defendant in this case first argues in his motion that the enhancement of his sentence under the firearm enhancement statute should be vacated, as the elements required for the enhancement, i.e., that the defendant "used, displayed, or threatened to use or display a firearm at the time of the felony," N.C. Gen. Stat. § 15A-1340.16A, were not alleged in the second-degree kidnaping indictment. According to the defendant, the omission of such facts rendered the indictment deficient, and the trial court therefore lacked the jurisdiction to impose the firearm enhancement.

The State does not contest that these facts were not alleged in the indictment, but argues that the *Apprendi* decision does not require such facts to be alleged in the indictment in state cases. Notably, it is the *Jones* decision, concerning the prosecution of a federal crime in

federal court, that includes language (quoted, *supra*) requiring such facts to be charged in the indictment. 526 U.S. at 243 n. 3, 143 L. Ed. 2d at 326 n. 3. The *Apprendi* Court, concerning a state prosecution of a state offense in state court, declared only that such facts "must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at —, 147 L. Ed. 2d at 455. The issue of whether the fact in question had to be charged in the indictment was not argued to the United States Supreme Court in *Apprendi*, wherein that Court stated in a footnote:

> *Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment.* He relies entirely on the fact that the "due process of law" that the Fourteenth Amendment requires the States to provide to persons accused of crimes encompasses the right to a trial by jury, *Duncan v. Louisiana,* 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968), and the right to have every element of the offense proved beyond a reasonable doubt, *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). That Amendment has not, however, been construed to include the Fifth Amendment right to "presentment or indictment of a Grand Jury" that was implicated in our recent decision in *Almendarez-Torres v. United States,* 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998). *We thus do not address the indictment question separately today.*

*Id.* at — n. 3, 147 L. Ed. 2d at 447 n. 3 (emphasis added).

Thus, the *Apprendi* decision does not support the defendant's assertion that "[t]he Trial Court did not have jurisdiction to impose the 60-month firearm enhancement" on the grounds that "the facts underlying their imposition were not alleged in the indictments." Indeed, we are unaware of any United States Supreme Court case which has applied the Due Process Clause of the Fourteenth Amendment in a manner which requires that a state indictment for a state offense must contain each element and fact which might increase the maximum punishment for the crime charged. *See State v. Wallace,* 351 N.C. 481, 508, 528 S.E.2d 326, 343 (2000) (upholding the constitutionality of North Carolina's short-form indictment despite a challenge in light of *Jones*). We are similarly unaware of any binding case law from any other federal courts, or from our own state courts, commanding such an outcome under either the United States Constitution or the North Carolina Constitution. The defendant's

argument that the trial court was without jurisdiction to impose the 60-month firearm enhancement as the facts underlying the enhancement were not alleged in the indictment for second-degree kidnaping is therefore without merit. *See Wallace*, 351 N.C. at 508, 528 S.E.2d at 343.

**[5]** The defendant next asserts that, in light of the *Apprendi* decision, the firearm enhancement statute is unconstitutional on its face, and as applied to him in this case, as it permits the trial court to make the requisite factual findings, instead of requiring that such factual determinations be submitted to the jury and proved beyond a reasonable doubt.

The defendant contends in his motion that, in determining the maximum penalty authorized by statute, one must consider the particular defendant's prior record level, as well as the existence or absence of aggravating or mitigating factors, as found by the trial court. Given the defendant's prior record level in the instant case of Level II and the absence of any finding of aggravating or mitigating factors, the defendant was subject to the presumptive range of minimum durations of punishment (23-29 months) for the offense of second-degree kidnaping, a Class E felony. *See* N.C. Gen. Stat. § 15A-1340.17 (Supp. 1996); N.C. Gen. Stat. § 14-39. The trial court imposed a minimum sentence of 29 months, which corresponds to a maximum term of imprisonment of 44 months. *See* N.C. Gen. Stat. § 15A-1340.17(e). The trial court then imposed the firearm enhancement, increasing the defendant's minimum term of imprisonment by 60 months to 89 months, which corresponds to a maximum term of imprisonment of 116 months. *See* N.C. Gen. Stat. § 15A-1340.16A(a); N.C. Gen. Stat. § 15A-1340.17(e). The defendant contends that his resulting sentence of 89 to 116 months was unconstitutional, as it far exceeded the "prescribed statutory maximum" for second-degree kidnaping, which, according to the defendant, was only 44 months.

The State counters that "the prescribed statutory maximum for an offense is the ultimate maximum possible provided by statute," such that the defendant's prior record level, and the absence or existence of aggravating or mitigating factors, is irrelevant in determining the maximum statutory punishment, and we need only look at the maximum punishment possible for the class of felony for which the defendant was convicted. Thus, by virtue of a jury's guilty verdict for a particular class of felony, the defendant would be subjected to the maximum punishment theoretically available to an offender commit-

ting that class of felony, assuming the highest prior record level (Level VI) and a finding of aggravating circumstances.[1]

Regardless of the manner in which the "prescribed statutory maximum" punishment is calculated, the State acknowledges that the firearm enhancement provision is unconstitutional as it was applied to the defendant in the instant case. Even assuming the State's asserted calculation of the "prescribed statutory maximum" punishment is correct, N.C. Gen. Stat. § 15A-1340.17(c) provides that for a defendant with prior record Level VI, and upon a finding of aggravating factors, the range of minimum durations of imprisonment for a Class E felony is 59-74 months. A minimum sentence of 74 months imprisonment (the absolute uppermost minimum term for a Class E felony) would correspond to a maximum term of 98 months. N.C. Gen. Stat. § 15A-1340.17(e). While the defendant contends the prescribed statutory maximum in this instance is 44 months, the State would apparently argue that the maximum penalty is 98 months. As the imposed sentence of 89 months minimum and 116 months maximum exceeded even the absolute uppermost statutory minimum of 74 months and maximum of 98 months, as calculated, the State concedes that the 60-month firearm enhancement was unconstitutionally applied in this instance. We agree.

Nonetheless, the State argues that the defendant has failed to establish that the statute is facially unconstitutional. Our Supreme Court has recently considered the requisite burden of proof in establishing the facial unconstitutionality of a statute, stating:

"A facial challenge to a legislative [a]ct is, of course, the most difficult challenge to mount successfully." *United States v. Salerno,*

---

1. We note that the United States Court of Appeals, Fourth Circuit, recently construed North Carolina's structured sentencing scheme in order to determine what constitutes a previous conviction for "a crime punishable by imprisonment for a term exceeding one year" for purposes of applying 18 U.S.C. § 922(g)(1). *United States v. Jones,* 195 F.3d 205, 206 (4th Cir. 1999). The defendant had a prior felon-in-possession conviction in North Carolina under N.C. Gen. Stat. § 14-415.1, a Class H felony. The defendant, with a prior record level II, argued that the maximum he could have received was 12 months, assuming the presence of aggravating factors (corresponding to a 10-month minimum, the uppermost available in the Class H-Level II cell in the structured sentencing grid, N.C. Gen. Stat. § 15A-1340.17(c), (e)). *Id.* at 206-7. The Fourth Circuit disagreed, opting to view the "offense statutory maximum as the statutory maximum for the crime, regardless of the prior criminal record status of the defendant." *Id.* at 207. Nonetheless, we must only accord decisions of the Fourth Circuit such persuasiveness as they might reasonably command. *See Milligan v. State,* 135 N.C. App. 781, 783 n. 2, 522 S.E.2d 330, 332 n. 2 (1999); *State v. Adams,* 132 N.C. App. 819, 820, 513 S.E.2d 588, 589 (1999) (holding that federal circuit court decisions "are not binding upon either the appellate or trial courts of this State").

481 U.S. 739, 745, 107 S. Ct. 2095, 2100, 95 L. Ed.2d 697, 707 (1987). "The presumption is that any act passed by the legislature is constitutional, and the court will not strike it down if [it] can be upheld on any reasonable ground." *Ramsey v. N.C. Veterans Comm'n*, 261 N.C. 645, 647, 135 S.E.2d 659, 661 (1964). An individual challenging the facial constitutionality of a legislative act "must establish that no set of circumstances exists under which the [a]ct would be valid." *Salerno*, 481 U.S. at 745, 107 S. Ct. at 2100, 95 L. Ed.2d at 707. The fact that a statute "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Id.*

*Thompson*, 349 N.C. at 491, 508 S.E.2d at 281-82. According to the State, *Thompson* states the inquiry as whether there exists any circumstances under which the firearm enhancement statute could be valid. As the defendant has failed to establish that there exist no circumstances under which the firearm enhancement could be constitutionally applied, the State contends that the firearm enhancement statute therefore is not facially unconstitutional as the defendant argues. *See id.*

Even assuming the defendant's more conservative method of calculating the prescribed statutory maximum punishment by considering the defendant's prior record level, the State argues that there are instances in which the 60-month firearm enhancement will not necessarily result in the imposition of a sentence exceeding the "statutory maximum." For example, a prior record Level II defendant convicted of a Class C felony *may* be subjected to a minimum term of 60 months (the lowermost term in the mitigated range) up to a minimum term of 125 months (the uppermost term in the aggravated range). If a defendant were sentenced in the mitigated range to a minimum of 60 months, even the imposition of the 60-month firearm enhancement would not exceed the uppermost statutory minimum in the aggravated range of 125 months. Again this ignores, in calculating the prescribed statutory maximum, any determination by the trial court of the absence or existence of mitigating or aggravating circumstances, such that the prescribed statutory maximum in every instance would be calculated based upon the highest statutory minimum in the aggravated range for a given class of felony and a given prior record level. The defendant argues that it is improper to ignore the trial court's finding of aggravating or mitigating circumstances in this manner.

While we perceive inequity in attributing theoretical characteristics to a defendant in this manner in order to determine the "prescribed statutory maximum" punishment available for an offense, we need not decide this question to resolve the issue currently before us, i.e., whether the firearm enhancement statute can be applied in a manner that would not offend the United States Supreme Court's decision in *Apprendi*.

In *United States v. Salerno*, 481 U.S. 739, 95 L. Ed. 2d 697 (1987)—relied upon by our Supreme Court in *Thompson*—the United States Supreme Court upheld the federal Bail Reform Act against a facial constitutionality challenge on the basis of substantive and procedural due process. As to the procedural due process challenge, the United States Supreme Court analyzed whether the procedures of the Bail Reform Act were sufficient to permit, pursuant thereto, the pretrial detention of *some* persons charged with crimes. *Salerno*, 481 U.S. at 751, 95 L. Ed. 2d at 711.

The United States Supreme Court noted that the Bail Reform Act limited the *possibility* of pretrial detention to only the most serious crimes, *id.* at 747, 95 L. Ed. 2d at 709, and concluded that "the pretrial detention contemplated by the Bail Reform Act is regulatory in nature, and does not constitute punishment before trial in violation of the Due Process Clause." *Id.* at 748, 95 L. Ed. 2d at 709. The United States Supreme Court declined to "intimate [a] view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." *Id.* at 747 note 4, 95 L. Ed. 2d at 709 n. 4. In rejecting the facial constitutionality challenge, the United States Supreme Court relied upon the legitimate and compelling regulatory purpose of the Act, as well as its finding that there were extensive procedural safeguards to protect the rights of pretrial detainees under the Act. *Id.* at 752, 95 L. Ed. 2d at 711-12.

In *Thompson*, our Supreme Court addressed the constitutionality of N.C. Gen. Stat. § 15A-534.1, authorizing the temporary pretrial detention, in limited circumstances, of certain persons charged with certain crimes of domestic violence. N.C. Gen. Stat. § 15A-534.1 (Supp. 1996). As in *Salerno*, the statute in *Thompson* involved a *discretionary* imposition of pretrial detention for a limited time (a maximum of 48 hours without a determination being made by a judge or magistrate), with attendant procedural safeguards for the protection of the detainees' rights. The pretrial detention statute survived the facial constitutional challenge on the basis that the application of the

procedural safeguards built into the statute served to protect the rights of defendants detained thereunder. While certain defendants (including Thompson) may, despite those safeguards, have their due process rights unconstitutionally denied as a result of an improper application of the statute, the General Assembly, in enacting the statute, included such safeguards to make such unconstitutional applications an anomaly, rather than the norm.

In contrast to the statutes at issue in *Salerno* and *Thompson*, the North Carolina firearm enhancement statute offers no such procedural safeguards, but instead removes from the jury the determination of facts that, if found, automatically deprive defendants of their liberty for a period of 60 months above and beyond that which the trial court could otherwise impose based upon the jury's guilty verdict on the underlying felony. The statute thus deprives defendants of their liberty while categorically denying them the attendant historical procedural safeguards: The right to have facts subjecting them to an increased penalty submitted to an impartial jury, and proved beyond a reasonable doubt.

The Bail Reform Act in *Salerno* presented federal prosecutors with a framework within which to seek pretrial detention in limited circumstances (yielding to trial courts the *discretion* to impose such detention), and established numerous procedural safeguards for the protection of the rights of persons so detained. The question of the constitutionality of the Act therefore became a matter of degree in its application, rather than constitutionality on its face. We find the facts of *Salerno* and its consideration of the federal Bail Reform Act to be inapposite to our present consideration of our state firearm enhancement statute. Likewise, insofar as *Thompson*, 349 N.C. 483, 508 S.E.2d 277, relies upon *Salerno*, we find *Thompson* to be inapposite, as it, too, dealt with a regulatory scheme rather than a punitive measure, and afforded discretion to trial judges, together with safeguards for defendants. It is precisely the lack of such discretion and procedural safeguards in the firearm enhancement statute which the defendant here contests.

Without endorsing the State's preferred method of calculating the "prescribed statutory maximum," we recognize the view that there *may* be circumstances (albeit rare) wherein the 60-month enhancement may be applied without exceeding the "prescribed statutory maximum" punishment. Nonetheless, the United States Supreme Court's decision in *Apprendi* commands that we find the firearm

enhancement statute unconstitutional. The *Apprendi* Court expressly endorsed:

> the statement of the rule set forth in the concurring opinions in [*Jones*]: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." 526 U.S. at 252-53, 119 S. Ct. [at 1228-29, 143 L. Ed. 2d at 332] (opinion of Stevens, J.); *see also id.*, at 253, 119 S. Ct. [at 1229, 143 L. Ed. 2d at 332] (opinion of Scalia, J.).

*Apprendi*, 530 U.S. at ——, 147 L. Ed. 2d at 455. The North Carolina firearm enhancement statute mandates that "the court shall increase the minimum term of imprisonment to which the [defendant] is sentenced by 60 months" if the court "finds that the [defendant] used, displayed, or threatened to use or display a firearm at the time of the felony," thereby explicitly removing from the jury the requisite factual determination. N.C. Gen. Stat. § 15A-1340.16A(a). Here, as in *Apprendi*, the statute in question removes any judicial discretion and *requires* an automatic enhancement of the sentence if the trial court makes a certain factual determination. *See* N.J. Stat. Ann. § 2C:44-3 (West Supp. 2000) (requiring the trial court to sentence the defendant "to an extended term if it finds, by a preponderance of the evidence," that the defendant "acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity"). Such a scheme directly contravenes the rule established in *Apprendi*.

Contrary to the State's assertions, the United States Supreme Court's holding in *McMillan v. Pennsylvania*, 477 U.S. 79, 91 L. Ed. 2d 67 (1986), does not lend support to its argument. In *McMillan*, the United States Supreme Court considered a challenge to Pennsylvania's Mandatory Minimum Sentencing Act, 42 Pa. Cons. Stat. § 9712 (1982), which subjected defendants convicted of certain felonies to a mandatory minimum sentence of five years' imprisonment if the sentencing judge found, by a preponderance of the evidence, that the defendant "visibly possessed a firearm" during the commission of the underlying felony. A separate sentencing statute mandated that the court "shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed." 42 Pa. Cons. Stat. § 9756(b) (1982).

Construing § 9712 and § 9756(b) together, the shortest maximum term permissible under the Mandatory Minimum Sentencing Act would be 10 years. The enumerated felonies listed in the Act consisted of felonies of the first degree, carrying a maximum penalty of 20 years' imprisonment, and of the second degree, carrying a maximum penalty of 10 years' imprisonment. *McMillan*, 477 U.S. at 87, 91 L. Ed. 2d at 77; *see* 42 Pa. Cons. Stat. §§ 9712, 9756(b). The statute thus operated "to divest the judge of discretion to impose any sentence of less than five years for the underlying felony," but did not "authorize a sentence in excess of that otherwise allowed for that offense." *Id.* at 81-82, 91 L. Ed. 2d at 73.

That is, the Act "ups the ante" for defendants, *id.* at 88, 91 L. Ed. 2d at 77, by increasing the minimum sentence to 5 years, and incidentally (pursuant to § 9756(b)) placing a lower limit of 10 years on the maximum term. Given that the maximum term of imprisonment (ignoring the 5-year minimum imposed by the Act) for the commission of the underlying felonies carries a maximum term of at least 10 years (and up to 20 years), the Act itself, when enforced according to its terms, does *not* expose defendants to greater or additional punishment. The same cannot be said of the North Carolina firearm enhancement statute, which, as demonstrated in the present case, "expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict." *Apprendi*, 530 U.S. at ——, 147 L. Ed. 2d at 457.

As we find that the firearm enhancement statute at issue here, when enforced according to its terms, "remove[s] from the jury the assessment of facts that increase the prescribed range of penalties to which [the] criminal defendant is exposed," *id.* at ——, 147 L. Ed. 2d at 455, we must, pursuant to *Apprendi*, declare the statute facially unconstitutional as violative of due process. *See id.* at ——, 147 L. Ed. 2d at 459 (finding that the procedures in New Jersey's challenged hate-crime statute represent "an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system.") *See also* U.S. Const. amend. V, VI, XIV. As a result, the defendant's "as applied" constitutionality argument is moot; similarly, we need not consider the defendant's arguments under the North Carolina Constitution. The defendant's motion for appropriate relief is therefore (1) denied in part insofar as it requests the right to a full briefing on all issues raised therein, and (2) granted in part insofar as it requests a determination that N.C. Gen. Stat. § 15A-1340.16A is facially unconstitutional, and requests that the defendant's

60-month firearm sentence enhancement be vacated. *See* N.C. Gen. Stat. § 15A-1415(b)(7).

**[6]** In the defendant's third assignment of error, he argues that the trial court erred on three separate occasions in allowing the State to present alleged hearsay statements made by Ms. Wall. First, the defendant contends that the trial court erred in allowing Officer Ruisi to testify concerning oral statements made to him by Ms. Wall after he first found her in Mr. Lawing's back yard. Second, the defendant contends the trial court erred in allowing into evidence Ms. Wall's written statement which was taken by Officer Ruisi approximately two hours and forty-five minutes after the argument with the defendant. Third, the defendant argues that the trial court erred in allowing Officer Ruisi to read Ms. Wall's written statement aloud to the jury. We find no error.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.R. Evid. 801(c) (1992). Statements which constitute hearsay are "inadmissible except as provided by statute or the rules of evidence." *State v. Rogers*, 109 N.C. App. 491, 498, 428 S.E.2d 220, 224, *disc. review denied*, 334 N.C. 625, 435 S.E.2d 348 (1993), *cert. denied*, 511 U.S. 1008, 128 L. Ed. 2d 54, *reh'g denied*, 511 U.S. 1102, 128 L. Ed. 2d 495 (1994); *see also* N.C.R. Evid. 802 (1992).

An exception to the general rule of inadmissibility of hearsay is acknowledged for excited utterances. "[T]estimony of a witness as to a statement made by a declarant relating to a startling event and made while the declarant was under the stress of that event is not excludable under the hearsay rule." *State v. Sneed*, 327 N.C. 266, 272, 393 S.E.2d 531, 534 (1990); *see also State v. Littlejohn*, 340 N.C. 750, 459 S.E.2d 629 (1995); N.C.R. Evid. 803(2) (1992). Rule 803(2) provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" should not be excluded by the hearsay rule, even though the declarant is available to testify. N.C.R. Evid. 803(2). The rationale underlying the admissibility of an excited utterance is its inherent trustworthiness. *State v. Winguard*, 317 N.C. 590, 598, 346 S.E.2d 638, 644 (1986). In order for a statement to fall within the parameters of the excited utterance exception of Rule 803(2), " 'there must be (1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication.' " *State v. Pickens*, 346 N.C. 628, 644,

488 S.E.2d 162, 171 (1997) (quoting *State v. Smith*, 315 N.C. 76, 86, 337 S.E.2d 833, 841 (1985)).

The evidence presented at trial showed that Ms. Wall made an oral statement to Officer Ruisi when he first arrived at Mr. Lawing's house and found her in Mr. Lawing's back yard. This oral statement was made to Officer Ruisi within several minutes of the defendant dragging Ms. Wall out of Mr. Lawing's house. Officer Ruisi testified that Ms. Wall was crying when he first found her and was so terrified she was having difficulty breathing. The trial court permitted Officer Ruisi to testify as to Ms. Wall's oral statement to him on the basis that her statement constituted an excited utterance under Rule 803(2). Based on the circumstances surrounding the statement, we find no error in the trial court's determination that this oral statement was an excited utterance, and its admission via Officer Ruisi's testimony was not improper.

[7] The defendant's argument that Ms. Wall's written statement was inadmissible hearsay is likewise without merit. The trial court admitted the written statement not as substantive evidence, but for the limited purpose of corroborative evidence only, which does not constitute hearsay. *See State v. Ford*, 136 N.C. App. 634, 640 n. 2, 525 S.E.2d 218, —— n. 2 (2000); *State v. Marine*, 135 N.C. App. 279, 287, 520 S.E.2d 65, 69 (1999). Our courts have long held that a witness's prior consistent statements may be admissible to corroborate the witness's in-court testimony. *See State v. Gell*, 351 N.C. 192, 524 S.E.2d 332 (2000); *State v. Coffey*, 345 N.C. 389, 480 S.E.2d 664 (1997). In order to be admissible as corroborative evidence, "the prior statement of the witness need not merely relate to specific facts brought out in the witness's testimony at trial, so long as the prior statement in fact tends to add weight or credibility to such testimony." *State v. Ramey*, 318 N.C. 457, 469, 349 S.E.2d 566, 573 (1986). Nonetheless, while "[t]he trial court has wide latitude in deciding when a prior consistent statement can be admitted for corroborative, nonhearsay purposes," *State v. Call*, 349 N.C. 382, 410, 508 S.E.2d 496, 513 (1998) (citing *State v. Levan*, 326 N.C. 155, 388 S.E.2d 429 (1990)), the State may not introduce as corroborative evidence prior statements of a witness that directly contradict the witness's trial testimony. *See Gell*, 351 N.C. at 204, 524 S.E.2d at 340.

We find that the written statement given by Ms. Wall to Officer Ruisi at the hospital was a prior consistent statement that the trial court properly admitted for the limited purpose of corroborating Ms. Wall's in-court testimony. While Ms. Wall's written statement was not

identical to her in-court testimony, it nonetheless was generally consistent with and tended to add weight or credibility to her sworn testimony. *See Ramey*, 318 N.C. at 468, 349 S.E.2d at 573; *see also State v. Locklear*, 320 N.C. 754, 762, 360 S.E.2d 682, 686 (1987). Furthermore, the trial court allowed defense counsel to redact certain portions of the statement, and instructed the jury to consider the statement for corroborative purposes only. We further conclude that it was not improper for the trial court to permit Officer Ruisi to read aloud the written statement (with appropriate portions redacted as requested by defense counsel) to the jury. We are aware of no authority holding that the declarant is the only party entitled to read aloud a prior consistent statement that corroborates their in-court testimony, and we decline to so hold. The defendant's third assignment of error is therefore overruled.

[8] The defendant's final assignment of error asserts that the trial court erred in preventing the defendant from introducing evidence of a prior bad act performed by Ms. Wall. In an effort to impeach Ms. Wall's credibility, the defendant sought to introduce extrinsic evidence showing that in February 1998, Ms. Wall let the air out of the tires of the defendant's vehicle. The defendant sought to elicit testimony to this effect on direct examination from the sister of the defendant, who was testifying as a defense witness. At no time did the defendant question Ms. Wall concerning this incident on cross-examination. The trial court held a *voir dire* hearing and declined to admit this evidence. We note that N.C.R. Evid. 608(b) prohibits such use of evidence of specific instances of conduct. *See* N.C.R. Evid. 608(b) (1992). We conclude that the trial court did not commit reversible or plain error by excluding this evidence.

Based upon our finding that the firearm enhancement statute, N.C. Gen. Stat. § 15A-1340.16A, is unconstitutional pursuant to the United States Supreme Court's decision in *Apprendi*, we vacate the defendant's sentence and remand in part to the trial court for resentencing.

No error in part, vacated and remanded in part for resentencing.

Judges LEWIS and HUNTER concur.